**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: August 17 2016**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-30531 |
| | ) | |
| Jeremy Lynn Kerr, | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | Adv. Pro. No. 15-03085 |
| | ) | |
| Daniel M. McDermott, United States Trustee, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jeremy Lynn Kerr, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendant's Motion for Summary Judgment ("Motion") [Doc. # 39] and Plaintiff's Response to Defendant's Motion ("Response") [Doc. # 43], which included the Affidavit of Christopher M. Frasor [Doc. # 43-1]. Defendant is the Debtor in the underlying Chapter 7 case pending in this court, and he is

representing himself in this adversary proceeding. In the Complaint [Doc. # 1], Plaintiff, the United States Trustee, seeks an order denying Defendant a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (B), 727 (a)(4)(a), and 727(a)(5).

The district court has jurisdiction over Defendant's underlying Chapter 7 bankruptcy case and all civil proceedings in it arising under Title 11, including this adversary proceeding. 28 U.S.C. § 1334(a) and (b). The Chapter 7 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. § 157(a) and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio. Proceedings to determine objections to discharge are core proceedings that this court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(J).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials and reviewed the entire record of the case.

Based upon that review, and for the reasons that follow, Defendant's Motion will be denied.

## FINDINGS OF FACT

Unless otherwise noted, the following facts are not in dispute. In July 2010, Defendant acquired real property at 13926 Defiance Pike, Rudolph, Ohio ("Defiance"). In March 2011, Defendant acquired real property at 133345 Ash Street, Weston, Ohio ("Ash"). Also in March 2011, Defendant acquired real property at 10730 Cygnet Road, Cygnet, Ohio ("Cygnet"). And again in March 2011, Defendant acquired the real property located 28926 Simmons Road, Perrysburg, Ohio ("Simmons"). [Doc. # 1, ¶¶ 19 - 22].

"At some time prior to March 2012," Defendant hired Ruth Ann Kramer, a realtor, to list the Ash property for sale. [Doc. # 1-2, Pl. Ex. B, p. 1]. After an offer was made and accepted on the Ash property, the Welles Bowen Title Agency initiated title work. [*Id.*]. During the title investigation, it was discovered that five judgment liens were filed on the property, including those of Carter-Jones Lumber, Larry Eilert, and ABCO Services, Inc. [*Id.*].

2

After being made aware of the liens, Defendant informed the Welles Bowen Title Agency that he was working on getting the liens paid and released. [*Id.*]. On March 15, 2012, Defendant emailed Patricia Kost ("Ms. Kost"), an employee of Welles Bowen, and attached to the email "copies of several documents that purported to be releases of the judgment liens" of Larry Eilert, ABCO Services, and Carter-Jones Lumber. [Doc. # 1-2, Pl. Ex. B, p. 2].

After investigating the documents, Ms. Kost determined that they were forgeries. The forgeries contained forged signatures of "attorneys Bradley Le Bouef, Cory Spewik and William Jennings, as well as the forged signatures of [three different] notaries . . . ." [Doc. # 1, ¶ 26]. In July 2012, Defendant-Debtor was indicted in the Wood County Court of Common Pleas for four charges of forgery and four charges of tampering with evidence [Doc. # 43, ¶ 14].

On October 22, 2012, Defendant deeded the Defiance, Ash, Cygnet, and Simmons properties (collectively, the "Properties") to Beaver Creek Development LLC ("Beaver Creek") for no consideration. [*Id.* at ¶¶ 15-16; Doc. 43, ]. Beaver Creek is an LLC wholly owned by Defendant.

On April 5, 2013, a jury in the Wood County Court of Common Pleas returned a guilty verdict on all eight charges against Defendant, related to the forgery and tampering charges. [*Id.* at ¶ 17]. Defendant was sentenced on June 4, 2013 to a total of seven years and eight months in prison. [Doc. # 1-2, Pl. Ex. B, p. 1]. Defendant is currently incarcerated at the North Central Correctional Institution in Marion, Ohio.

On August 20, 2013, the Common Pleas Court of Henry County, Ohio entered an order appointing a Receiver for all the real and personal property of Defendant, Kerr Buildings Inc. (an Ohio corporation wholly owned by Defendant), and Beaver Creek. [Doc. # 1-3, Pl. Ex. C]. Defendant admits that before and after the Receiver was appointed, he "continued to represent to his Judgment Creditors and the Receiver that the Defiance, Ash, Cygnet, and Simmons" properties were the "exclusive property of Beaver Creek." [Doc. # 1, ¶ 32].

Defendant filed his Chapter 7 bankruptcy petition on February 27, 2015. [Case No.15-30531, Doc. # 1]. In his petition and schedules he filed on that date, Defendant listed his "[s]tock and interests in incorporated and unincorporated businesses" as "none", and he listed

3

no value for those interests. [*Id.* at p. 10]. He did not list his interests in Kerr Buildings Inc. ("Kerr Buildings") and Beaver Creek, nor did he identify values associated with those interests. [Case No. 15-30531, Doc. # 1, Schedule B].

Additionally, in the petition and schedules filed on February 27, 2015, Defendant did not include the names and addresses of the Receiver or certain judgment creditors (Carter-Jones Lumber Co., Keith Lenz, Larry Eilert and Juliet Eilert, ABCO Services, Steven Zimmerman, Scott Bishop and Kathy Bishop) and/or their attorneys on Schedule F and the Creditor Matrix. Instead, Defendant listed case numbers from civil actions brought by certain creditors and used the addresses of the courts in which the lawsuits were brought. [Case No. 15-30531, Doc. # 1].

Plaintiff timely filed a "Complaint to Deny Discharge Pursuant to 11 U.S.C. § 727" (the "Complaint") on August 13, 2015. [Doc. # 1]. The Complaint seeks an order denying Defendant's discharge and alleges four counts against Defendant: (1) that Defendant, with the intent to "hinder, delay or defraud" one or more creditors, concealed property within one year before the filing date of his petition; (2) that Defendant, with the requisite intent, concealed property of the estate after the date his petition was filed; (3) that Defendant knowingly and fraudulently, in or in connection with the case, made one or more false oaths or accounts; and (4), that Defendant failed to explain satisfactorily before determination of denial of discharge under § 727, any loss of assets or deficiency of assets to meet the debtor's liabilities. [Doc. # 1; Doc. # 43].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of

4

informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by "showing" that there is no such issue by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

In his Motion, Defendant states that "[u]ndoubtedly, the non-disputed facts of this case demonstrate that the Henry Court Appointed Receiver. . . had complete control and possession of the equity on the properties during the entire year prior to the filing of the petition", and as such, Plaintiff "cannot produce any evidence that the Defendant controlled the equity of the properties in the one year prior to filing . . ." [Doc. # 39, p. 6]. Defendant posits that the Plaintiff will not be able to produce evidence that Defendant intentionally did something improper within one year before the filing date of his petition.

However, Defendant's argument regarding Claim One of the Complaint does not invalidate Plaintiff's cause of action brought pursuant to 11 U.S.C. § 727(a)(2)(A). The Sixth Circuit ruled in *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 684 (6th Cir. 2000) that under the continuous concealment doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing. The key issue in "continuing concealment" is whether a defendant possessed the requisite intent

5

to "hinder, delay or defraud" a creditor during the year prior to filing. *Id.*

Other than writing in his Motion that Plaintiff cannot produce evidence that proves Defendant had the requisite intent, Defendant does not provide the court with any evidence that shows an absence of a genuine issue of material fact with regards to his intent, nor does he provide the court with any caselaw or information to show that the continuing concealment doctrine may not apply in this case  Defendant has not met his burden as set forth by the *Celotex* court and will not be granted summary judgment on Count 1.

Defendant again posits that because "the Henry Court Appointed Receiver. . . had complete control and possession of the equity on the properties" after he filed the petition, Plaintiff cannot produce any evidence that Defendant controlled the equity of the properties after the filing. [Doc. # 39, p. 7].  As with Count 1, Defendant does not identify any portion of the pleadings, answers to interrogatories, or admissions on file that demonstrate the absence of a genuine issue of material fact.

Defendant admitted that he deeded the Properties to Beaver Creek, which he wholly-owned, and on his Schedule B, he listed his "[s]tock and interests in incorporated and unincorporated businesses" as "none".  Plaintiff asserts that these omissions, as well as omitting creditors' names from his bankruptcy schedules, constitute Defendant's continuing concealment of his Properties.  Defendant's Motion makes the argument that because the Receiver had "complete control and possession of the equity", he would be unable to conceal property of the estate after the filing of his petition.  This argument, made without pointing to any evidence on the record or attempting to show the absence of a genuine issue of a material fact, such as the absence of the intent required to prove to a § 727(a)(2)(b) claim, does not meet the burden of proof required of a movant in a summary judgment motion. Thus, Defendant will not be granted summary judgment on Count II.

Defendant also cannot be granted summary judgment on Counts III and IV of Plaintiff's Complaint.  Under § 727(a)(4)(A), "[t]he court shall grant a discharge unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account," and false statements made in a debtor's schedules are sufficient to justify the denial of a debtor's discharge. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). Additionally, "the aggregate of [a debtor's] misstatements and omissions of fact

can demonstrate a pattern of reckless disregard for the truth and intent of concealing information from the Court and its creditors." *In re Moreo*, 437 B.R. 40, 64 (E.D.N.Y. 2010).

The Sixth Circuit recently considered fraudulent intent and materiality under Section 727(a)(4)(A) in *In re Gandy (Gandy v. Schuchardt)*, 2016 WL 1381882, 2016 U.S. App. LEXIS 6509 (6th Cir. Apr. 7, 2016)[1]. In *Gandy*, the debtor twice filed bankruptcy schedules that contained inaccurate income numbers and relied on them for more than two years despite numerous objections from creditor Schuchardt. The debtor "relied upon false income numbers for years, and he continued to rely upon these numbers as [the creditor] repeatedly challenged their veracity. *In re Gandy*, 2016 WL 1381882 at *5, 2016 U.S. App. LEXIS 6509 at * 11. This gave the court reason to find that the debtor acted with the requisite fraudulent intent. *Id. See also, Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.").

The *Gandy* debtor argued that of the false oaths made in his Original and Amended Chapter 13 and Chapter 7 filings, none were material. The court found this argument "unavailing." *In re Gandy*, 2016 WL 1381882 at *5, 2016 U.S. App. LEXIS 6509 at * 12. The Sixth Circuit stated in *Gandy* that the test for determining the materiality of a false oath was not as narrow as the debtor suggested. Instead, "a false oath is material if it 'bears a relationship to the bankrupt's business transactions.'" *In re Gandy*, 2016 WL 1381882 at *5, 2016 U.S. App. LEXIS 6509 at * 12 (*citing, In re Beaubouef,* 966 F.2d at 178). "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Id.*

It is undisputed that on Defendant's petition, he made the aforementioned omissions regarding his stock and interests in incorporated and unincorporated businesses, and Defendant does not dispute that he omitted the names and addresses of the state court receiver and certain judgment creditors. Accordingly, there are genuine issues of fact as to whether or not Defendant's omissions bore a relationship to his business transactions.

Defendant acknowledges the omissions and attempts to explain them through

---

[1]/ The court has attached the entire text of the *Gandy* decision to this Memorandum and Order, labeled as Exhibit A.

7

inadvertence, arguing that the court-appointed receiver and some of his creditors discovered his bankruptcy filing despite his not having correctly listed them. [Doc. # 39, pp. 8-9]. However, courts recognize that admissions regarding fraudulent intent are rare, and denials of fraudulent intent is the norm. *In re Halishak*, 337 B.R. 620, 627 (Bankr. N.D. Ohio 2005). "Thus, the requisite intent under § 727(a)(4)(A) may be inferred from circumstantial evidence or by inference based on a course of conduct." *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 248 (Bankr. N.D. Ill. 2005). "In using circumstantial evidence, there will often exist numerous evidentiary indicators, each of which alone would not establish fraud, but when viewed collectively form a trail leading firmly in the direction of fraudulent intent." *In re Halishak*, 337 B.R. at 627. It should be noted that "[a] reckless disregard as to whether a representation is true will also satisfy the intent requirement." *In re Keeney*, 227 F.3d at 685.

Accordingly, there are genuine issues of fact as to whether or not Defendant's omissions were made with fraudulent intent.

Plaintiff correctly notes that the mere fact that the receiver appeared at the first scheduled meeting of creditors, and that certain creditors made appearances in the case are not valid defenses to an § 727(a)(4)(A) claim. In his Response, Plaintiff states that "the question of whether the Defendant made these omissions knowingly and fraudulently is a matter appropriately left for trial." [Doc. # 43, p. 13]. The court agrees, as Defendant did not show an absence of a genuine issue of material fact regarding his intent behind the omissions.

In Count IV, Plaintiff alleges, under § 727(a)(5), that because the Defendant failed to explain in a satisfactory manner the loss of assets or deficiency of assets, specifically, the transfers for zero consideration of Defendant's interest in the Defiance, Ash and Simmons properties to Beaver Creek, he should be denied a discharge.

Section 727(a)(5) is a Bankruptcy Code provision that serves to "relieve. . . creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor." *In re Olbur*, 314 B.R. 732, 740 (N.D. Ill. 2004)(*quoting, In re Hermanson*, 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002)). A debtor's explanation pursuant to a § 727(a)(5) claim, while not necessarily needing to be comprehensive, must meet two criteria in order to be found satisfactory. First, it usually needs to be supported by

documentation. *In re Costello,* 299 B.R. 882, 901 (Bankr. N.D. Ill. 2003). Second, the documentation must sufficiently "eliminate the need for the Court to speculate as to what happened to all the assets." *In re Stamat,* 395 B.R. 59, 77 (Bankr. N.D. Ill. 2008)(*citing, In re Bostrom*, 286 B.R. 352, 364-65 (Bankr. N.D. Ill. 2002)), *aff'd*, 635 F.3d 974 (7th Cir. 2011).

The Plaintiff is not required to prove that the Defendant acted knowingly or fraudulently, as noticeably lacking from § 727(a)(5) is any element of wrongful intent. *See e.g.*, *Smith v. Morse (In re Morse)*, 550 B.R. 338, 361-362 (Bankr. E.D. Tenn. 2016).

Defendant's argument in his Motion is as follows: "Absent of establishing the Continuing Concealment Doctrine, the US Trustee is not entitled to an explanation." [Doc. # 39, p. 12]. This assertion is neither supported by documentation nor sufficiently eliminates the need for the court to speculate as to what happened to any assets in this case. It is not entirely clear what Defendant is asserting. If the argument is premised on a cause of action under § 727(a)(5) being somehow ancillary to a cause of action under § 727(a)(2)(A), that position would be erroneous. Section 727(a)(5) provides an independent statutory basis for denial of discharge. *See e.g.*, *In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983).

Moreover, while some cases acknowledge that "it would be absurd to apply § 727(a)(5) without some time limit"[2], there is ample case law that would allow denial of discharge under § 727(a)(5) without requiring Plaintiff to first prove "continuing concealment". While cases often focus on a two year period prior to filing, the exact time a court should look back depends on the case; there is no hard and fast rule. *See*, *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005)(citing cases). At least one courts has looked to the time frame in Question 18 of the Statement of Financial Affairs, which asks about business interests the debtor had in the previous six years. *See*, *Res-TX One LLC v. Hawk (In re Hawk)*, 534 B.R. 697, 717 (Bankr. S.D. Tex. 2015). On appeal, the *D'Agnese* court upheld denial of discharge under § 727(a)(5) for failure to satisfactorily explain asset transfers going back approximately 9 years. *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996)(Chapter 7 filed in 1994, with discharge denied based, in part,

---

[2]/ *Res-TX One LLC v. Hawk (In re Hawk)*, 534 B.R. 697, 717 (Bankr. S.D. Tex. 2015).

upon the failure to satisfactorily explain jewelry sold between 1983 and 1991).

Other courts incorporate a time restriction in the elements that must be demonstrated to prevail on denial of discharge under § 727(a)(5). Under these cases, a plaintiff must demonstrate that "(1) at a time not too remote from the bankruptcy, the Defendant owned identifiable assets; (2) on the day that he commenced his bankruptcy case, the Defendant no longer owned the particular assets in question; and (3) his schedules and/or pleadings in the bankruptcy case do not offer an adequate explanation for the disposition of the assets in question." *Smith v. Morse (In re Morse)*, 550 B.R. 338, 361 (Bankr. E.D. Tenn. 2016)(citing cases).

Viewing the facts in the light most favorable to the non-moving party, the docket does not reflect that Defendant attempted to obtain a protective order in response to Plaintiff's request for documents related to the transfers of Defendant's interest in the Defiance, Ash and Simmons properties to Beaver Creek, through the request for production of the Beaver Creek ('and other entities') records, if he believed the request to be unduly burdensome or otherwise not legally required.

Further, the criminal action against the Defendant, which initially involved an attempt to transfer the Ash property, would appear to be an argument for extending the time period for which the Debtor must "explain satisfactorily" the disposition of his assets. The Affidavit of Christopher M. Frasor states that the transfers of the real estate occurred after Defendant was indicted. [Doc. # 43-1, p. 2, ¶ 8]. Again, this may be a factor that would extend (if any extension were need), or make "not too remote", the time frame for requiring the Defendant to "explain satisfactorily" the loss or deficiency of assets, "namely the transfers for zero consideration of the Defendant's interest in Defiance, Ash, and Simmons properties to Beaver Creek." [Doc. # 1, ¶ 56].

## **CONCLUSION**

As Defendant has been unable to demonstrate the absence of a genuine issue of material fact as to any of Plaintiff's four counts in the Complaint, Defendant's Motion for Summary Judgment will be denied.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 39] be,

15-03085-jpg    Doc 46    FILED 08/17/16    ENTERED 08/17/16 14:25:00    Page 10 of 16

and hereby is, **DENIED**. The trial on this matter will proceed as originally scheduled on August 22, 2016 at 10:00 a.m., as set forth in the court's order entered on May 27, 2016. [Doc. # 40].

**EXHIBIT A**

2016 WL 1381882
Only the Westlaw citation is currently available.
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals,
Sixth Circuit.

In re Kevin Brian GANDY, Debtor.
Kevin Brian Gandy, Appellant/Cross–Appellee,
v.
Elliott J. Schuchardt, Appellee/Cross–Appellant.

Nos. 15–5831, 15–5832.
|
April 7, 2016.

**Synopsis**
**Background:** Creditor brought adversary proceeding to deny debtor a discharge in Chapter 7 based, inter alia, on his alleged false oaths. The United States Bankruptcy Court for the Eastern District of Tennessee, Richard Stair, Jr., J., 2013 WL 3712425, entered judgment in favor of creditor on "false oath" claim, and debtor appealed. The District Court, Pamela L. Reeves, J., 2015 WL 4431017, affirmed. Debtor appealed.

**Holdings:** The Court of Appeals, Julia Smith Gibbons, Circuit Judge, held that:

[1] bankruptcy court did not clearly err in finding that debtor had acted with at least reckless disregard for the truth, so as to satisfy intent element of "false oath" discharge exception, and

[2] understatement of debtor's disposable income on "means test" forms was "material" false oath.

Affirmed.

On Appeal from the United States District Court for the Eastern District of Tennessee.

BEFORE: MERRITT, GIBBONS, and SUTTON, Circuit Judges.

OPINION

JULIA SMITH GIBBONS, Circuit Judge.

**\*1** Creditor Elliott Schuchardt filed an adversary proceeding for a determination that Chapter 7 debtor Kevin Gandy should be denied discharge based upon 11 U.S.C. §§ 727(a)(2), (3), and (4). The bankruptcy court denied Gandy's discharge after finding that Gandy knowingly and fraudulently made false statements under oath that materially related to his bankruptcy case in violation of 11 U.S.C. § 727(a)(4)(A), and Gandy appealed. The district court affirmed, and Gandy again appealed. We affirm.

## I.

On February 3, 2011, Gandy filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Along with his petition, Gandy filed his Schedule I—Current Income of Individual Debtor(s) ("Original Chapter 13 Schedule I"), which stated that he was single and had two dependents: a 48 year-old "Live–In Wife/Girlfriend" and a disabled 27–year–old son. Gandy's Original Schedule I also stated that he was employed as the business and finance manager of West Side Honda in Knoxville, Tennessee, that his gross monthly income was $3,962, and that his "Combined Average Monthly Income" was $2,801. Gandy further noted that he is paid based on commission and that his income fluctuates. Gandy signed a declaration under penalty of perjury that he "read the foregoing summary and schedules, ... and that they are true and correct to the best of [his] knowledge, information, and belief." On June 21, 2011, Gandy filed an Amended Chapter 13 Schedule I, which revised his marital status to "Married" and stated that his spouse was unemployed.

In his Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Original Chapter 13 Means Test"), which was also filed on February 3, 2011, Gandy again represented that he was unmarried. He further represented that his monthly income totaled $4,333, which made his annualized income $51,996, which is less than the applicable median family income in Tennessee of $52,368.[1] As with his Schedule I, Gandy signed a declaration under penalty of perjury.

Gandy also filed an Original Statement of Financial Affairs, in which he represented that he had not closed, sold, or otherwise transferred any financial accounts or instruments in the preceding year. As with his other filings, Gandy declared under penalty of perjury that his answers were true and correct. When Gandy filed an Amended Statement of Financial Affairs on June 21, 2011, he did not change his answer regarding whether he had closed any financial accounts in the preceding year, but in fact he had closed a bank account with Branch Banking & Trust ("BB & T") on September 28, 2010, just four months before he initiated his Chapter 13 bankruptcy proceedings.

After a trial in August 2011, the bankruptcy court confirmed Gandy's Chapter 13 Plan, which required him to make semi-monthly payments of $141 for sixty months. The bankruptcy court overruled the objections of Schuchardt, who had challenged the accuracy of Gandy's schedules. As a condition of confirmation, the bankruptcy court required Gandy to file a declaration under penalty of perjury setting forth all income earned for each subsequent 90–day period and to pay any excess disposable income to the Chapter 13 Trustee. On February 5, 2013, the Chapter 13 Trustee filed a motion to dismiss Gandy's Chapter 13 case because Gandy had failed to pay $6,110 in excess disposable income. Before the bankruptcy court ruled on the Chapter 13 Trustee's motion to dismiss, however, Gandy converted his case to Chapter 7, pursuant to 11 U.S.C. § 1307.

*2 Upon conversion to Chapter 7, Gandy filed under penalty of perjury a Chapter 7 Statement of Current Monthly Income and Means–Test Calculation ("Original Chapter 7 Means Test"), which again classified him as unmarried and listed a total current monthly income of $4,333 and an annualized income of $51,996. Because Gandy's reported annualized income was less than the applicable median family income of $52,368, a presumption of abuse did not arise under 11 U.S.C. § 707(b)(2).[2]

Shortly thereafter, Schuchardt filed a motion to dismiss Gandy's Chapter 7 case, arguing that Gandy's Original Chapter 7 Means Test was false and constituted abuse under 11 U.S.C. § 707(b). The bankruptcy court denied Schuchardt's motion to dismiss because Gandy's income as stated in his Means Test was low enough that only the court and the United States Trustee had standing to seek dismissal of Gandy's case under § 707(b)(6).

In response, Schuchardt filed the instant adversary proceeding, claiming that Gandy should be denied discharge for knowingly and fraudulently filing false documents in violation of 11 U.S.C. §§ 727(a)(4)(A), (a)(2), and (a)(3). Before

Gandy responded to the Complaint, he filed a notice to withdraw his Original Chapter 7 Means Test, which he asserted had been filed "in error." On that same date, Gandy filed an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Amended Chapter 13 Means Test"), in which he certified that he was unmarried and which updated his monthly income to $4,689, with an annualized income of $56,268 —more than the applicable median family income of $52,368. Likewise, Gandy filed an Amended Chapter 7 Statement of Current Monthly Income and Means–Test Calculation ("Amended Chapter 7 Means Test"), in which he certified that he was unmarried and which updated his monthly income to $4,689, with an annualized income of $56,268.

The bankruptcy court found that Gandy had made material false oaths with fraudulent intent in his Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13 Schedule I, and his Original/Amended Statement of Financial Affairs, which warranted denial of discharge under 11 U.S.C. § 727(a)(4)(A). However, the bankruptcy court declined to find that Gandy had violated 11 U.S.C. §§ 727(a)(2) or (a)(3). The district court affirmed the ruling of the bankruptcy court.

## II.

"On appeal following the district court's review of the bankruptcy court's decisions, we review the bankruptcy court's orders directly rather than the intermediate decision of the district court." *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 411 (6th Cir.2013) (citation omitted). We therefore review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Id.* A factual finding is clearly erroneous only if, based on the whole record, we are left with a definite and firm conviction that a mistake has been made. *See, e.g., United States v. McGee*, 494 F.3d 551, 554 (6th Cir.2007). Although "[t]he Bankruptcy Code should be construed liberally in favor of the debtor," discharge is a privilege and not a right, as a debtor who has engaged in certain types of misconduct is not entitled to a discharge. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir.2000); *see* 11 U.S.C. § 727.

*3 The bankruptcy court denied discharge on the sole ground that Gandy made false oaths. Schuchardt contends that the bankruptcy court erred in not additionally finding that Gandy violated §§ 727(a)(2) and 727(a)(3). However, "[i]f any one of these grounds justifies the denial of discharge, we need not decide the propriety of the others." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 177 (5th Cir.1992). Because we affirm the bankruptcy court's denial of discharge pursuant to § 727(a)(4), we do not address the merits of Schuchardt's §§ 727(a)(2) and 727(a)(3) claims.

[1] 11 U.S.C. § 727(a)(4)(A) provides as follows: "The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." In order to merit denial of Gandy's discharge, Schuchardt must prove five elements by a preponderance of the evidence: "1) [Gandy] made a statement under oath; 2) the statement was false; 3) [Gandy] knew the statement was false; 4) [Gandy] made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *In re Keeney*, 227 F.3d at 685 (citing *In re Beaubouef*, 966 F.2d at 178). "Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact," which we review for clear error. *Eifler v. Wilson & Muir Bank & Trust Co.*, 588 Fed.Appx. 473, 477 (6th Cir.2014) (quoting *In re Keeney*, 227 F.3d at 685). False statements in the debtor's schedules are sufficient to justify the denial of discharge. *In re Beaubouef*, 966 F.2d at 178.

We previously considered fraudulent intent and materiality under 11 U.S.C. § 727(a)(4)(A) as follows:

> [I]ntent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* "[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case." *Williamson [v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir.1987) ] (citation omitted). However, a debtor is entitled to discharge if false information is

the result of mistake or inadvertence. *See* [*Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir.1997)]. The subject of a false oath is material if it " 'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.' " *Beaubouef*, 966 F.2d at 178 (citation omitted).

*In re Keeney*, 227 F.3d at 685–86. Further, materiality does not turn solely on an asset's value, but also depends on "whether the omission was detrimental to creditors." *Pratt v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir.2005) (quoting *In re Beaubouef*, 966 F.2d at 178). "It makes no difference that he does not intend to injure his creditors when he makes a false statement." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984).

**\*4** The bankruptcy court found that Gandy made material false oaths in his Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13 Schedule I, and his Original/Amended Statement of Financial Affairs. The bankruptcy court reasoned that "based upon the Defendant's own pay advices, the $4,333.00 reflected in the Chapter 13 Means Test and again in the Chapter 7 Means Test is not an accurate figure, and the Defendant's testimony that the three day delay in filing his bankruptcy schedules caused a mathematical error is not plausible and is clearly incorrect." *In re Gandy*, No. 11–30369, Adversary No. 13–3061, 2014 WL 1374050, at \*6 (Bankr.E.D.Tenn. Apr. 8, 2014). Gandy's "testimony at trial that he had not remembered when the [BB & T] account had been closed did not satisfy the court that the failure to list the account was a mere oversight." *Id.* at \*7. Further, Schuchardt's "objections and motions put [Gandy] on notice that he should recheck his numbers, which were sworn to under penalty of perjury." *Id.* at \*8.

On appeal, Gandy argues that the false oaths were mere mistakes and that he lacked the intent required by the statute. He further asserts that the false oaths were not material, as required by *In re Keeney*. According to Gandy, because the false statements in the Chapter 13 and Chapter 7 Means Test would not affect his eligibility to file a Chapter 7 petition, he should not be denied discharge. As for his failure to disclose the BB & T account, Gandy claims that he "stated several times at trial that the omission was caused by sheer inadvertence." First Br. at 22.

As early as February 22, 2011, the same month in which Gandy filed his original Chapter 13 petition, Schuchardt's objections to the accuracy of Gandy's filings should have put Gandy on notice that his stated income was false. Although the bankruptcy court ultimately confirmed Gandy's Chapter 13 plan, and overruled Schuchardt's objections, the court ordered Gandy to file his payroll stubs with the court and to pay additional earned income to the Chapter 13 Trustee—which further should have put Gandy on notice regarding the accuracy of his filings. Gandy again filed under penalty of perjury the incorrect income amount when he converted his case to Chapter 13 more than two years later. Gandy did not finally correct the mistakes in his Original Chapter 13 Means Test until July 31, 2013, and in his Original Chapter 7 Means Test until September 11, 2013. Gandy's reliance on inaccurate schedules for more than two years, despite repeated objections from Schuchardt, certainly gave the bankruptcy court reason to find that Gandy had acted with the requisite fraudulent intent. *See Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987) ("Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.").

**\*5** Despite signing declarations under the penalty of perjury, Gandy relied upon false income numbers for years, and he continued to rely upon these numbers as Schuchardt repeatedly challenged their veracity. *See* Fed. R. Bankr.P. 1008. He has never explained why some of his documents and his testimony at trial indicate that he is married, while others list him as unmarried, nor has he explained how he could spend $147 per month on educational expenses for a minor child when his only stated dependents are a wife/girlfriend and twenty-seven year old son. Contrary to the "fundamental purpose of § 727(a)(4)(A) ... to insure that the trustee and creditors have accurate information without having to do costly investigations," Gandy presented confusing and dishonest information to the bankruptcy court on multiple occasions. *See United States Trustee v. Zhang (In re Zhang)*, 463 B.R. 66, 86 (Bankr.S.D.Ohio 2012) (quoting *Jahn v. Flemings (In re Flemings)*, 433 B.R. 230, 237 (Bankr.E.D.Tenn.2010)). When considered together, the numerous and repeated false oaths in the Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13 Schedule I, and his Original/Amended Statement of Financial Affairs, prove a clear example of "a pattern

15-03085-jpg    Doc 46    FILED 08/17/16    ENTERED 08/17/16 14:25:00    Page 15 of 16

of reckless and cavalier disregard for the truth." *Stevenson v. Taylor (In re Taylor),* 461 B.R. 420, 423 (E.D.Mich.2011) (citation omitted).

[2] Gandy's argument that none of the false oaths in his Original/Amended Chapter 13 Means Test, his Original/Amended Chapter 7 Means Test, his Original/Amended Chapter 13 Schedule I, and his Original/Amended Statement of Financial Affairs, are material, is unavailing. The test for determining whether a false oath is material is not so narrow as Gandy suggests when he contends that materiality requires that a false oath "would have changed [something] with respect to the case or produced an asset or other benefit to the estate." *See* First Br. at 26. Rather, a false oath is material if it "bears a relationship to the bankrupt's business transactions." *In re Beaubouef,* 966 F.2d at 178 (citation omitted). "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Id.* (citation omitted).

In this case, the false oaths regarding Gandy's income were detrimental to creditors. Gandy's misstated income potentially affected the rights of Schuchardt and other creditors to file a motion to dismiss, as well as whether a presumption of abuse arose in the case and whether Gandy was required to complete additional paperwork. Although the instant case related to Gandy's Chapter 7 bankruptcy, his inaccurate income in his Original Chapter 13 Means Test directly related to the confirmation of his Chapter 13 plan and how much he owed to the Chapter 13 Trustee each month and was in place for more than a year before he converted to Chapter 7. Gandy's false oaths regarding his monthly income are plainly material. So too is the false oath in the Original/Amended Statement of Financial Affairs, in which Gandy failed to disclose the closure of the BB & T account. The bankruptcy court found that Gandy's testimony at trial that his failure to disclose this account was a mere oversight was not convincing, and Gandy presented no compelling argument for why this court should overturn this factual finding by the bankruptcy court.

*6 For the reasons stated previously, we affirm.

**All Citations**

--- Fed.Appx. ----, 2016 WL 1381882

Footnotes

1   Because Gandy represented that his annualized income was less than that of the applicable median family income in Tennessee, he did not have to complete the remainder of the Means Test, including information regarding deductions from income, disposable income, and additional expenses.

2   If a debtor's annualized income exceeds the applicable median family income, then a presumption of abuse of bankruptcy law's protections arises under § 707(b), which requires the debtor to provide additional information to the court to ensure that the debtor is eligible for the total relief promised a Chapter 7 debtor. *See Schultz v. United States,* 529 F.3d 343, 347–48 (6th Cir.2008).

End of Document                                                                 © 2016 Thomson Reuters. No claim to original U.S. Government Works.