**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: August 30 2017**

John P. Gustafson
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-30531 |
| | ) | |
| Jeremy Lynn Kerr, | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | Adv. Pro. No. 15-03085 |
| | ) | |
| Daniel M. McDermott, | ) | Judge John P. Gustafson |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jeremy Lynn Kerr, | ) | |
| | ) | |
| Defendant(s). | ) | |

## <u>MEMORANDUM OF DECISION</u>

This adversary proceeding is before the court for decision after trial on Plaintiff Daniel M. McDermott's Complaint [Doc. # 1] against Defendant Jeremy Lynn Kerr (or "Mr. Kerr"), which requests a order denying Defendant's discharge pursuant to 11 U.S.C. § 727(a). Defendant is the debtor in the underlying Chapter 7 case. The *pro se* Defendant is currently incarcerated and appeared at the trial telephonically. Plaintiff (or "UST") is the duly-appointed United States Trustee.

The District Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the District Court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. The above captioned adversary case is a core proceeding in which this court can make a final determination because it involves a debtor's right to a discharge. 28 U.S.C. § 157(b)(1) and (2)(J).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined all the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant's discharge should be denied.

## FINDINGS OF FACT

This adversary proceeding was commenced on August 13, 2015 [Doc. # 1] when Plaintiff filed a Complaint alleging that Defendant: 1) concealed possessory and equitable interests in four different properties within one year before the petition date; 2) concealed the same possessory and equitable interests in the four properties after the petition date; 3) knowingly and fraudulently made one or more false oaths or accounts in connection with his bankruptcy case; and 4), failed to satisfactorily explain the loss of assets or deficiency of assets. [*Id.*]

Many of the following facts were previously set forth in the court's Memorandum and Order Denying Defendant's Motion for Summary Judgment. [Doc. #46]. In July 2010, Defendant acquired real property at 13926 Defiance Pike, Rudolph, Ohio ("Defiance"). In March 2011, Defendant acquired real property at 133345 Ash Street, Weston, Ohio ("Ash"). Also in March 2011, Defendant acquired real property located at 10730 Cygnet Road, Cygnet, Ohio ("Cygnet") and 28926 Simmons Road, Perrysburg, Ohio ("Simmons"). [Doc. # 1, ¶¶ 19 - 22].

"At some time prior to March 2012," Defendant hired realtor Ruth Ann Kramer to list his Ash property for sale. [Pl. Ex. 3-1]. After an offer was made and accepted on the Ash property, the Welles Bowen Title Agency initiated title work. [*Id.*]. As the title was being investigated, it was discovered that five judgment liens were filed against the property, including those of Carter-Jones Lumber, Larry Eilert, and ABCO Services, Inc. [*Id.*].

2

After Ruth Ann Kramer informed Defendant of the liens, Defendant acknowledged their existence and indicated that he was working on getting the liens paid and released. [*Id.*]. On March 15, 2012, Defendant emailed Patricia Kost ("Ms. Kost"), an employee of Welles Bowen, and attached to the email "copies of several documents that purported to be releases of the judgment liens" of Larry Eilert, ABCO Services, and Carter-Jones Lumber. [Pl. Ex. 3, p. 3-2].

After investigating the documents, Ms. Kost determined that the releases were forgeries. The documents contained forged signatures of "attorneys Bradley Le Bouef, Cory Spewik and William Jennings, as well as the forged signatures of [three different] notaries . . . ." [Pl. Ex. 3, p. 3-2, 3-3]. In July 2012, Defendant-Debtor was indicted in the Wood County Court of Common Pleas for four charges of forgery and four charges of tampering with evidence [Pl. Ex. 2, ¶ 3].

On October 22, 2012, Defendant deeded the Defiance, Ash, Cygnet, and Simmons properties (collectively, the "Properties") to Beaver Creek Development LLC ("Beaver Creek"). [Pl. Exs. 8-11]. Beaver Creek is an LLC wholly owned by Defendant. Christopher Frasor ("Frasor"), the state court appointed receiver, swore in an affidavit [Pl. Ex. 2, ¶ 8] and testified at trial that the Properties were transferred for no consideration.

On April 5, 2013, a Wood County Court of Common Pleas jury returned a guilty verdict on all eight charges against Defendant [Pl. Ex. 3], and he was sentenced on June 4, 2013 to seven years and eight months in prison. [Pl. Ex. 3, p. 3-1]. As of the date of the trial, Defendant remained incarcerated at the North Central Correctional Institution in Marion, Ohio.

On August 20, 2013, the Common Pleas Court of Henry County, Ohio appointed a Receiver for all the real and personal property of Defendant, Kerr Buildings Inc. (an Ohio corporation wholly owned by Defendant), and Beaver Creek. [Pl. Ex. 1]. Defendant admitted that before and after the Receiver was appointed, he "continued to represent to his Judgment Creditors and the Receiver that the Defiance, Ash, Cygnet, and Simmons" properties were the "exclusive property of Beaver Creek." [Doc. # 1, ¶ 32; Doc. # 5, ¶ 32].

In a decision issued on December 12, 2014, Defendant's Wood County criminal convictions were affirmed by the Sixth District Court of Appeals. *State v. Kerr*, 2014-Ohio-5455, 2014 WL 7004796, 2014 Ohio App. LEXIS 5286 (6th Dist. Ct. App. December 12, 2014).

Defendant filed his Chapter 7 bankruptcy petition on February 27, 2015. [Case No.15-30531, Doc. # 1]. In his schedules, Defendant listed his "[s]tock and interests in incorporated and

3

unincorporated businesses" as "none", and he listed no value for those interests. [*Id.* at p. 10]. He did not list his interests in Kerr Buildings Inc. ("Kerr Buildings") and Beaver Creek on Schedule B, line 13, nor did he identify any values associated with those interests. [Case No. 15-30531, Doc. # 1, Schedule B].

Additionally, in the documents filed with his Petition on February 27, 2015, Defendant did not include the names and addresses of the Receiver or certain judgment creditors (Carter-Jones Lumber Co., Keith Lenz, Larry Eilert and Juliet Eilert, ABCO Services, Steven Zimmerman, Scott Bishop and Kathy Bishop) and/or their attorneys - either on Schedule F or on the Creditor Matrix[1]. Instead, Defendant listed just case numbers from civil actions brought by certain creditors, and used the addresses of the courts in which the lawsuits were brought. [Case No. 15-30531, Doc. # 1].

Plaintiff filed the "Complaint to Deny Discharge Pursuant to 11 U.S.C. § 727" (the "Complaint") on August 13, 2015 [Doc. # 1], seeking an order denying Defendant's discharge. The Complaint alleges four counts against Defendant: (1) that Defendant, with the intent to "hinder, delay or defraud" one or more creditors, concealed property within one year before the filing date of his petition; (2) that Defendant, with the requisite intent, concealed property of the estate after the date his petition was filed; (3) that Defendant knowingly and fraudulently, in or in connection with the case, made one or more false oaths or accounts; and (4), that Defendant failed to explain satisfactorily before determination of denial of discharge under § 727, any loss of assets or deficiency of assets to meet the debtor's liabilities. [Doc. # 1].

In the court's Order Denying Defendant's Motion for Leave to File Revised Summary Judgment, the court recorded the following stipulation between the parties: "[t]he parties stipulate that the factual findings of the state court decisions regarding Mr. Kerr will not be re-litigated at trial." Any objections to the stipulation were to be made no later than November 30, 2016. [Doc. # 56]. On November 23, 2016, Defendant filed his "Opposition to the Trustee's Motion In Limine", which the court construed as Defendant's objection to the aforementioned stipulation. [Doc. # 60]. As of November 23, 2016, the UST had not filed a motion *in limine*.

Prior to the trial, each party filed written motions *in limine*. [Doc. ## 63, 72]. Plaintiff

---

[1] "The creditor matrix is used by the Clerk to send notices and orders generated in a bankruptcy case to creditors and other parties-in-interest in the case." *In re Clark*, 2014 WL 5100111 at *1, 2014 Bankr. LEXIS 4334 at *2 (Bankr. S.D. Tex. Oct. 10, 2014).

4

argued that the court should refuse to admit any evidence offered by the Defendant that would attempt to re-litigate his state court convictions, and instead adopt the state court findings "as conclusive and binding for purposes of adjudicating the Complaint." [Doc. # 72, p. 6]. In his Opposition filed in response to Plaintiff's written motion *in limine*, Defendant argued that collateral estoppel should not apply to the case at hand, as "Ohio Law . . . states if the outcome of the trial can be overturned on review, then Collateral Estopple [sic] cannot apply. [Doc. # 81, p. 2].

In ruling on the motions, the court denied Defendant's motion *in limine* and granted in part and denied in part Plaintiff's motion *in limine*. *See, McDermott v. Kerr (In re Kerr*), 2017 WL 923941, 2017 Bankr. LEXIS 606 (Bankr. N.D. Ohio Mar. 6, 2017). The crux of the motions *in limine* involved the extent to which collateral estoppel applied to the judgment of conviction against Defendant entered in state court. Defendant argued that the disposition of certain properties, described in detail in the Sixth District Court of Appeal's opinion [Doc. #1-2] and again in this court's Order Denying Summary Judgment [Doc. # 46], "never took place on March 15 or 20 of 2015." [Doc. # 63, p. 2]. He also argued that collateral estoppel should not apply. Plaintiff urged the court to adopt the state court findings as conclusive, which would prevent Defendant from re-litigating his state court convictions.

The court ruled that Defendant's criminal forgery and tampering convictions did not preclude him from presenting testimony or evidence to rebut or explain the criminal convictions against him, as affirmed in the state appellate court decision. But, the court would not preclude Plaintiff from admitting into evidence the Ohio Sixth District Court of Appeals' decision that affirmed Defendant's criminal convictions. Instead the court would take judicial notice of the state court opinion: "the record of the criminal conviction would be entered into evidence and accorded whatever weight the fact finder deem[ed] appropriate in light of whatever evidence Defendant-Debtor [would] present to rebut, explain, or otherwise mitigate the state court findings. *See*, *Breckler v. Martin*, 2002 WL at *3, 2002 U.S. Dist. LEXIS at *7." *In re Kerr*, 2017 WL 923941 at * 5, 2017 Bankr. LEXIS 606 at *12-13.

At the trial, the UST presented evidence and testimony regarding Defendant's consistent pattern of actions that hindered and delayed his creditors, and his omissions and false statements. The UST also argued that Defendant fraudulently transferred property to his wholly-owned company Beaver Creek, and because of his actions, including continuing concealment, the court should deny

5

Defendant his discharge.

Patti Baumgartner-Novak ("Novak"), the Chapter 7 trustee in the underlying bankruptcy case, testified that Defendant had previously filed a bankruptcy petition on November 3, 2014 [Pl. Ex. 12] which was dismissed on March 2, 2015. [Case No. 14-34007, Doc. # 25]. Defendant filed his petition in the current case on February 27, 2015. [Case No. 15-30531, Doc. # 1]. Novak noted that she initially thought Defendant lived at the Defiance property[2], based on the address shown on page 1 of his petition. [Pl. Ex. 14, p. 14-1]. She testified that he wrote "None" for property on Schedule A and had "None" checked for each line item in Schedule B. [*Id.*, pp. 14-9 - 14-11]. Even "wearing apparel" is checked as "None". [*Id.*, p. 14-9]. Novak specifically pointed out that Defendant checked "None" for line item 13, "[s]tock and interests in incorporated and unincorporated businesses. Itemize." [*Id.*, p. 14-10]. Because "None" was checked, no "current value of debtor's interest in property" was listed.

On Schedule F, Novak stated that while Defendant listed "a lot of court cases", he did not include creditors such as Carter-Jones, ABCO Services, Inc., and Larry Eilert. [*Id.*, pp. 14-17 - 14-21]. In short, Defendant listed courts and court cases but did not list the names and mailing addresses[3] of certain known creditors who had litigated against him in the past.

After the first 341 hearing was continued based on Defendant's inability to appear due to his incarceration, Novak mailed "TRUSTEE'S FIRST SET OF INTERROGATORIES DIRECTED TO DEBTOR JEREMY LYNN KERR IN LIEU OF HIS TESTIMONY AT 341 MEETING OF CREDITORS" to Defendant. [Pl. Ex. 15]. She also had contact with the state court receiver, Frasor. Frasor "filled [Novak] in on what was going on [with Defendant's properties]." After sending Defendant additional interrogatories, Novak referred Mr. Kerr's case to the Office of the United

_____

[2] Interrogatory question No. 4 asked: "What is your current address and how long have you resided at this address? If less than 2 years, please state all addresses in the last two years before filing." Defendant's answer was: "13926 Defiance Pk Rudolph, OH 43962". [Pl. Ex. 15, p. 15-2]. Defendant's signature on his responses to the Trustee's First Set of Interrogatories was notarized on May 5th, 2015. Defendant signed his "Supplementation of Interrogatory" on January 12, 2016, stating that: "At the time of filing, Debtor resided in the custody of the State of Ohio at NCCI in Marion, Ohio. Prior to June 4, 2013, Debtor resided at 13939 Defiance Pike, Rudolph, Ohio 43462." [Pl. Ex. 27, p. 27-1].

[3] Section 521(a)(1)(A) states that "The debtor shall (1) file – (A) a list of creditors; . . . ". Federal Rule of Bankruptcy Procedure 1007(a)(1) further provides that in a voluntary bankruptcy case: "the debtor shall file with the petition a list containing the name and address of each entity included or to be included on schedules D, E, F, G, and H as prescribed by the Official Forms."

6

States Trustee because she felt that the petition failed to inform certain creditors that Defendant had filed for Chapter 7 relief. "Something just [didn't] smell right" with the petition.

When questioned about Defendant's Statement of Financial Affairs ("SOFA"), Novak noted that in response to Question 1, Defendant's written response indicated that he had no income. In answering Question 4, Defendant attached a continuation sheet, wherein he disclosed five pending lawsuits, four of which involved creditors ABCO Services, Inc., Carter Lumber, Larry Eilert, and Keith Lenz. [Pl. Ex. 14, SOFA, pp. 14-53 - 14-54]. The continuation sheet also disclosed the court-appointed receivership, and listed Frasor's name and address as a custodian of records. [*Id.*, p. 14-55]. However, he was not listed on the bankruptcy matrix. [Pl. Ex. 14, pp. 14-50 - 14-52]. In answering question 18 of the SOFA ("Nature, location and name of business"), Defendant listed Kerr Buildings, Inc. and Beaver Creek Development, LLC. [*Id.*].

When reviewing the first set of interrogatories she received back from Defendant, Novak testified that Defendant's answers were "short and sweet. [The answers did not provide] a lot of detail." When asked why Defendant had a receiver dealing with his assets, and what assets the receiver would be dealing with, Defendant wrote "(See attached) I have no assets." [Pl. Ex. 15, p. 15-5]. The attachment set forth that "[t]he [state] Court wrongfully ordered Mr. Fraser [*sic*] to sell the assets of Beaver Creek Development, LLC. Beaver Creek Development, LLC is not a party to the [state court] case. . . ." [*Id.*, p. 15-7]. On the same attachment, Defendant set forth that Beaver Creek Development, LLC held three assets worth a total of $200,000.00. The three assets were the Ash, Simmons, and Defiance properties. [*Id.*].

In a letter addressed to Novak and dated 5-31-15, Defendant wrote that "[he] stumbled on a case where an individual failed to list in her Bankruptcy Petition possible 'causes of actions likely to arise in a non-bankruptcy context.'" He further wrote that he had "several 'cause of actions' that will arise in a non-bankruptcy context", but "I have reviewed my Bankruptcy Petition, and I fail to see where these 'causes of action' should be listed." [Pl. Ex. 16]. Novak testified that after she received this letter, it was apparent to her that Defendant had more knowledge about the bankruptcy process than a typical *pro se* debtor.

On July 10, 2015, Novak responded with a letter to Defendant, wherein she stated "that any [legal] claim [he] may have [wa]s now an asset of the bankruptcy estate and in [her] control." [Pl. Ex. 17]. Defendant sent a four page letter back in response, describing certain causes of action he

alleged he had against Carter-Jones Lumber, Larry and Julie Eilert, ABCO Services, Inc. and Steven Zimmerman, Corey Speweik, Scott and Kathy Bishop, and Christopher Frasor. [Pl. Ex. 18, pp. 18-1 - 18-4]. Novak testified that based upon the four page letter detailing his alleged causes of action, it was apparent to her that "[Defendant] knew a lot about the details, and a lot about the creditors."

A review of Mr. Kerr's letter to the Trustee reflects relatively sophisticated knowledge of legal concepts [*Id.*], and was consistent with the testimony at trial regarding Mr. Kerr's skills as a state court litigator. Notably, one of Mr. Kerr's causes of action is based, in part, on insufficiency of service of process by his adversary, rendering the lien taken by Keith Lenz - in the view of Mr. Kerr - invalid. [Pl. Ex. 18, pp. 18-3 - 18-4].

On July 19, 2015, Defendant filed an amended Schedule A[4], adding "Possible Future Civil Actions" against Carter-Jones Lumber, Larry and Julie Eilert, ABCO Services Inc. and Steven Zimmerman, Christopher Frasor, and Corey Speweik. Novak noted that he had still made no disclosure of the Defiance, Ash, Cygnet, or Simmons' properties, and in a Summary of Schedules filed by Defendant on August 7, 2015, he again listed assets totaling $0. His creditor matrix continued to show Lucas County Common Pleas, Wood County Common Pleas, Bowling Green Municipal Court, and Henry County Common Pleas Court as creditors. Although Defendant admitted in a letter to Novak that Carter-Jones, Larry and Julie Eilert, ABCO Services, Inc., and Scott and Kathy Bishop had obtained judgments against either him or "Kerr Construction", neither they nor the court-appointed receiver Christopher Frasor were listed on the creditor matrix. [Pl. Exs. 18, 20].

On July 21, 2015, Frasor mailed a letter to Scott R. Belhorn (or "UST"), a trial attorney for

---

[4]/ Schedule A is for listing real property. The proper place to list the causes of action would have been Schedule B, Line 21, "Other contingent and unliquidated claim of every nature, . . . . Give estimated value of each." or Line 35 "Other personal property of any kind not already listed. Itemize." Courts have not been receptive to claims that Line 21 is somehow ambiguous about requiring causes of action to be listed. *See*, *Cannon–Stokes v. Potter*, 453 F.3d 446, 447 (7th Cir.2006)("'contingent and unliquidated claims of every nature,' the schedule calls them, leaving no room for quibbles"). Moreover, "'[i]t is well-settled that a cause of action is an asset that must be scheduled under [11 U.S.C. § 521].' *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 424 (6th Cir.2005)." *Bone v. Taco Bell of America*, LLC, 956 F.Supp.2d 872, 884 (W.D. Tenn. 2013); *see also*, *Harrah v. DSW Inc.*, 852 F.Supp.2d 900, 903 (N.D. Ohio 2012). Even assuming Mr. Kerr found the language of Schedule B to be unclear, it is difficult to see how the Trustee's Interrogatory Question No. 12 could be misunderstood. It asked: "Do you have the right to sue anyone for any reason? If yes, please specify." Mr. Kerr's hand written answer was "No". [Pl. Ex. 15, p. 15-3]. Defendant's response to the Trustee's interrogatories was signed and notarized on May 5th, 2015 [Pl. Ex. 15, p. 15-6], while his letter stating that he didn't know where the causes of actions should be listed in his bankruptcy documents was dated May 31, 2015. [Pl. Ex. 16].

the Office of the United States Trustee. The letter informed the UST that on October 22, 2012, Defendant transferred four pieces of real estate from himself to Beaver Creek Development, a "shell LLC" of which Defendant was the sole member. The properties were subject to "judicial liens by no less than 3 parties." [Pl. Ex. 21, p. 21-2]. In Frasor's words, the letter served to "highlight the fraudulent tendencies of [Defendant] and his methodical attempts to circumvent the rights of his creditors." [*Id.*].

On August 12th and August 14th, 2015, almost two months after the deadline for filing a complaint to determine dischargeabilty or deny discharge, Creditors Keith Lenz ("Lenz") and Scott Bishop ("Bishop") each caused to be filed motions to delay discharge and motions for leave to file an adversary case. [Pl. Exs. 24, 25]. In their Motions, Lenz and Bishop alleged that they had never received proper notice of the filing of Defendant's Chapter 7 Bankruptcy. The motions were denied, in part because there was no fixed deadline to file an adversary complaint under Section 523(a)(3)[5], and because, with the consent of the parties, the creditors did not request a determination of their motions under Rule 4004(b)(2)[6]. [Def. Exs. H-1, H-2].

On December 29, 2015, Defendant filed an Amended Schedule B. The Amended Schedule B did not include any bank account information, but it did list Defendant's interests in Kerr Buildings, Inc. and Beaver Creek Development, LLC. [Pl. Ex. 26]. In the certificate of service, the attorneys for creditors Lenz and Bishop were now listed. [*Id.*]. It was not until almost a year later, on December 16, 2016, that Defendant filed an Amended Schedule F. On the Amended Schedule F, Carter Lumber, Keith Lenz, ABCO Services, Inc., Scott Bishop, and Frasor were listed for the first time. [Pl. Ex. 30].

Frasor also testified at the trial on this matter. As the state court-appointed receiver, his duties are to manage and administer the receivership estate. When he was appointed as receiver on

---

[5]/ "Bankruptcy Code section 523(a)(3)(C) provides that a chapter 7 discharge does not discharge a debt of the kind specified in sections 523(a)(2),(4) or (6) that was neither listed nor scheduled unless the creditor had notice or actual knowledge of the bankruptcy case in time to file a timely nondischargeability action." *In re Chin Kun An*, 526 B.R. 24, 26 (Bankr. C.D. Cal. 2015).

[6]/ "(2) A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection. The motion shall be filed promptly after the movant discovers the facts on which the objection is based." Fed. R. Bankr.P. 4004(b)(2).

9

August 20, 2013, the underlying issue at the time was a "construction agreement [gone] awry." The order appointing him receiver [Pl. Ex. 1] ordered that he should "take immediate possession, control, management, operation and charge of [Defendant]'s businesses, including but not limited to Kerr Buildings, Inc. and Beaver Creek Development Co. LLC." [*Id.*, p. 1-3]. In an affidavit, Frasor swore that he "began the process of preparing the [Properties] for sale" when he became aware of Mr. Kerr's November 3, 2014 chapter 7 bankruptcy petition. [Pl. Ex. 2, p. 2-2]. That case [Case. No. 14-34007] was dismissed due to Defendant's failure to complete the credit counseling requirement.

When questioned by the UST about the four properties deeded to Beaver Creek in October of 2012, Frasor testified that the Cygnet property had been sold in foreclosure. While no sales of the other Properties were pending, "some were threatening." Frasor testified as to Plaintiff's Exhibits Four through Seven, identifying them as the deeds to the Defiance property [Pl. Ex. 4], the Ash property [Pl. Ex. 5], the Simmons property [Pl. Ex. 6], and the Cygnet property [Pl. Ex. 7]. He further identified Plaintiff's Exhibits Eight through Eleven as quitclaim deeds from Defendant to Beaver Creek, with Exhibit Eight being the Defiance property [Pl. Ex. 8], Exhibit Nine being the Ash property [Pl. Ex. 9], Exhibit Ten being the Simmons property [Pl. Ex. 10], and Exhibit Eleven being the Cygnet property. [Pl. Ex. 11]. Frasor testified that the quitclaim deeds referenced that the transfers were "for valuable consideration", but in fact they had been quitclaimed for $0.

Defendant asked Frasor if he was ever notified by the Henry County Court of his bankruptcy filing. Frasor answered "No." When Defendant asked Frasor if he was ever notified by the Henry County Court of Common Pleas of Defendant's motion to remove him as receiver, Frasor again answered "No."

Defendant's Exhibits T-1 through T-8 all pertained to Defendant's then-pending habeas petition before a magistrate judge in the Northern District of Ohio, Eastern Division. During Defendant's case-in-chief, he discussed Exhibit T-2, using it to argue that the Wood County Court of Common Pleas had not been proven to be a proper venue to try him for forgery. [Def. Ex. T-2]. When questioned by the UST, Defendant admitted that his habeas petition had already been denied in part. Defendant also testified that the Ohio Supreme Court had denied certiorari, that he had exhausted his state court appeals, and that he had now filed an objection to the federal magistrate

10

judge's "Report and Recommendation", which triggered *de novo* review by the District Court.[7] [Def. Ex. T-1].

When testifying as to why he filed for bankruptcy, Defendant stated that he obtained his list of creditors from creditreport.com. [Def. Ex. B]. The credit report reflected court judgments from the Wood County Common Pleas Court and the Wood County Municipal Court. [*Id.,* pp. 5, 6]. Defendant said that he listed his creditors in his current bankruptcy petition in the same manner that he listed them in a petition he filed in 1999,[8] and he assumed that his creditors would receive notice. Defendant stated that he assumed that because an "Order on Notice of Bankruptcy Filing" (issued by the Wood County Court of Common Pleas in a foreclosure action) [Def. Ex. I] listed ABCO, Scott Bishop, Carter-Jones Lumber, Larry Eilert, and Keith Lenz as interested parties [*Id.,* p. 2], they would receive notice from the state court of his bankruptcy filing.

Defendant asserted that he had no intent to defraud any creditors, as evidenced by his inclusion of his ongoing interest in Beaver Creek Development, LLC on his continuation sheet in his petition. [Pl. Ex. 14, p. 14-55]. His contention was that he would not have listed his interest in the LLC if he had any intent to defraud his creditors. "When I was made aware of the mistakes, I corrected them."

Defendant testified that he had originally intended to flip the Properties. He knew of two liens, and "two" he thought "were dormant." He claimed that he had started legal proceedings to get rid of the judgment liens prior to his forgery conviction, and he transferred the properties to Beaver Creek because he was going to be renting them out to future tenants.

On cross examination, the UST asked Defendant if he thought it proper to list courts and case numbers on his Schedule F. Defendant answered in the affirmative, stating that "his sister and a friend" did the same thing. The UST asked Defendant if after he filed his Complaint in August of 2015, did Defendant wait until December 2016 to amend his Schedule F? Defendant answered that he did not amend Schedule F until December 16, 2016, more than sixteen months after Plaintiff's

---

[7]/ It appears that the United States District Court subsequently denied Defendant's Writ of Habeas Corpus by a Person in State Custody. *Kerr v. Turner*, 2017 WL 1317212, 2017 U.S. Dist. LEXIS 54444 (N.D. Ohio April 10, 2017)(Boyko, J.).

[8]/ A review of the dockets reflects that Mr. Kerr filed two Chapter 7 cases, one with an attorney in 1999 that was dismissed for failure to pay the filing fee [Case No. 99-34558], and a second Chapter 7 case was filed in 2000 *pro se* [Case No. 00-34616]. Mr. Kerr received a discharge in the second case.

11

Complaint had been filed. When asked if he was trying to keep the Properties out of the hands of judgment creditors, Defendant denied that that was his intent. Rather, he transferred the properties with the intent to protect himself when (or if) he would rent them out in the future. He further testified that he never lived at the Defiance property that he had listed as his address in his petition. Listing that address "was a mistake", and he meant to list his mother's address instead. On redirect, Defendant stated that he had finally amended Schedule F in the hopes that the UST would "drop this whole thing."

In closing, Plaintiff reiterated the UST's position that the evidence demonstrated that Defendant had an intent to hinder, delay, and defraud his creditors. Defendant allegedly transferred the properties to an entity that he controlled, and the transfers were made for no consideration. The UST argued that Defendant did not properly disclose information that was required to be included on Schedules A, F, and his SOFA. The UST asserted that Defendant was very capable of reading legal documents, such as the instructions set forth in Schedule F. Further, because Defendant demonstrated his capability of understanding and complying with the law when it was in his own interest to do so, the court should not believe Defendant's contention that he thought it would be acceptable to list only the state court addresses in his petition, rather than the names and addresses of his actual creditors.

In his closing argument, Defendant stated that it seemed like the UST's case against him was for a fraudulent transfer, even though he had never been charged with making a fraudulent transfer at the state court level[9]. He did not believe that he concealed any property, because "everyone knew the property."[10] Defendant testified that he did not use the Properties for his personal use, and even if he were not currently incarcerated, he would not have had control of them because of the appointed receiver. Defendant argued that he "wanted his creditors to know [that he had] filed bankruptcy", and it was his contention that no parties had complained about improper notice. He further contended that the two creditors who filed motions in the underlying Chapter 7 had proper

---

[9]/ The July 21, 2015 letter from Christopher M. Frasor to the UST and Trustee Novak stated: "In 2013, Mr. Keith Lenz won a civil judgment against Mr. Kerr for fraudulent transfer. . . ." [Pl. Ex. 21, p. 21-3]. Mr. Lenz was one of the creditors who's name and mailing address was omitted from Schedule F and the matrix.

[10]/ The knowledge of creditors about undisclosed assets does not obviate a debtor's duty to fully disclose all required information. *See e.g.*, *In re Henley*, 480 B.R. 708, 794-795 (Bankr. S.D. Tex. 2012).

12

notice of his bankruptcy filing.

For the reasons that follow, the court will grant judgment on the Complaint in favor of Plaintiff and against Defendant.

## LAW AND ANALYSIS

The UST seeks to deny Defendant's discharge under 11 U.S.C. § 727(a)(2)(A), § 727(a)(2)(B), § 727(a)(4)(A), and § 727(a)(5).

A bankruptcy discharge is considered the heart of the Bankruptcy Code's "fresh start" policy. *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004). Denial or revocation of a debtor's discharge are extraordinary remedies that run contrary to the Bankruptcy Code's "fresh start" policy. *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008); *Sayre*, 321 B.R. at 426–27.

Consistent with the fresh start policy underlying the Bankruptcy Code, the provisions of § 727(a) are to be construed strictly against the objecting party and liberally in favor of the debtor. *Risk v. Hunter (In re Risk)*, 535 B.R. 203, 220 (Bankr. N.D. Ohio 2015) (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)). The party objecting to the discharge has the burden of proving by a preponderance of the evidence that the exception applies. *Keeney*, 227 F.3d at 683.

On the other hand,

> [T]he very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "the successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) (citations omitted).

## I. Sections 727(a)(2)(A) and (a)(2)(B).

Sections 727(a)(2)(A) and (B) provide that:

(a) The court shall grant the debtor a discharge unless–

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred,

13

removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

    (A) property of the debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition[.]

This section of the Code requires a plaintiff to prove the following two elements: "1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'" *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)(quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997). Although *Keeney*'s focus was on defrauding "a creditor", the statute specifically includes "an officer of the estate charged with custody of property under this title", and courts have held that a bankruptcy trustee is such an officer. *See*, *In re Searles*, 317 B.R. 368, 380 (9th Cir. BAP 2004), *aff'd*, 212 Fed.Appx. 589 (9th Cir.2006); *In re Clark*, 525 B.R. 442, 457 (Bankr. D. Idaho 2015); *In re Luby*, 438 B.R. 817, 827-828 (Bankr. E.D. Pa. 2010); *In re Green*, 268 B.R. 628, 646-647 (Bankr. M.D. Fla. 2001).

Under § 727(a)(2)(A), the property disposed of, or concealed, must be property of the debtor and the disposition or concealment must have occurred within one year before the date the petition was filed. Under § 727(a)(2)(B), the property disposed of must be property of the bankruptcy estate and the disposition must therefore have occurred after the filing of the petition.

The Sixth Circuit Bankruptcy Appellate Panel clarified the *Keeney* decision did not require a transfer of property. Instead, the language in the decision "was simply recognition that concealment allegations typically arise in the context of a debtor who transferred title to property in order to hinder, delay, or defraud a creditor while retaining some benefit of ownership." *In re Swegan*, 383 B.R. 646, 654 (6th Cir. BAP 2008).

Thus, the *Swegan* court held:

In cases where there has *not* been a transfer of property, courts have defined concealment as including the withholding of knowledge or information required by law to be made known. *See*, *e.g.*, *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir.1999)(defining concealment as "'preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known'" (quoting *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir.1984))). To restrict the meaning of concealment in § 727(a)(2)(A) to a debtor's retention of some

14

interest in property after divestiture of legal ownership would effectively write the word out of the statute, since the word "transfer" is already included in the statute. To give effect to each word in the statute, as we must, we conclude that concealment as used in § 727(a)(2)(A) includes the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("[S]tatute must, if possible, be construed in such form that every word has some operative effect.").

*Swegan*, 383 B.R. at 654-655.

One aspect of this case involves Defendant's transfers of four properties (Defiance, Ash, Cygnet, and Simmons) to Beaver Creek, an LLC wholly owned by Defendant. The Properties were transferred by quitclaim deed to Beaver Creek on October 22, 2012, more than two years before Defendant filed bankruptcy on February 27, 2015. However, the *Keeney* court discussed the continuing concealment doctrine, a doctrine under which "a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing." *Keeney*, 227 F.3d at 684 (quoting, *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)); *see also*, 6 Collier on Bankruptcy, ¶ 727.02[2][b] (16th ed.).

In *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993), the court described the doctrine of "continuing concealment" by explaining that "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year."

Here, the basis for finding continued concealment of the properties, and the fact that they were transferred to Beaver Creek, would be based upon the fact that the transfers were to an entity that was owned by Defendant. Courts have long held that concealment for purposes of § 727(a)(2) may occur when a debtor transfers "legal title to property to a third party with the retention of a secret interest." *Ohio Citizens Trust Co. v. Smith (In re Smith)*, 11 B.R. 20, 22 (Bankr.N.D.Ohio 1981); *Kaler v. Craig (In re Craig)*, 195 B.R. 443, 449 (Bankr.D.N.D.1996); *Consumers United Capital Corp. v. Green (In re Green)*, 202 B.R. 68, 73 (Bankr.D.Md.1996)(holding that the transfer of assets to a wholly owned corporation may constitute a concealment).

In the case at hand, Defendant transferred legal title to the Properties to Beaver Creek, an

15

entity wholly owned by Defendant. Yet when he filed his petition, Defendant had "None" checked for each line item in Schedule B. [*Id.*, pp. 14-8 - 14-11]. Specifically, Defendant checked "None" for line item 13, "[s]tock and interests in incorporated and unincorporated businesses. Itemize." [*Id.*, p. 14-10].

It should be noted that the Defendant submitted almost identical documents with his earlier Chapter 7 case, filed November 3, 2014. [Case No. 14-34007, Doc. # 1; Pl. Ex. 12]. Schedule B lists no interest in any property of any kind. [*Id.*] The names and addresses of the judgment creditors were not listed on the matrix, and the Statement of Financial Affairs has almost identical continuation sheets. [*Id.*].

Defendant asserts that the boxes checked in his Statement of Financial Affairs [Pl. Ex. 14, pp. 14-37 - 14-38] and the continuation sheets attached to the end of his bankruptcy documents [Pl. Ex. 14, pp. 14-53 - 14-56], were sufficient disclosures of his interest in the transferred real estate and his interests in Kerr Buildings, Inc. and Beaver Creek Development LLC [Pl Ex. 12, p. 12-43; Pl. Ex. 14, p. 14-55], and that "everyone" knew about the transferred Properties. While Frasor and some of Defendant's creditors, such as Lenz, knew of the transfers to Beaver Creek, there is no evidence that all of his creditors knew of the transfers.

While "everyone knew" is not a defense to a debtor's failure to disclose required information, the questions about transfers of property in the Statement of Financial Affairs do not appear to specifically require the disclosure of the October 22, 2012 conveyances to Beaver Creek. Even in the earlier Chapter 7 case, which was filed on November 3, 2014, the transfers of the Properties had occurred two years and two weeks earlier, and thus were not within "two years". [Pl. Ex. 12, p. 12-34, Question 10. a.].

Nevertheless, there are differences in this case that distinguish it from cases where the transferor's retention of an interest, through control of a business entity, has resulted in denial of discharge.[11] First, it is hard to see what 'secret interest' in the property the Defendant controlled.

---

[11]/ "[W]hen a debtor transfers assets to another without receiving adequate consideration (especially a person with a close relationship to the debtor), but retains control over the assets, the debtor likely has the intent necessary to deny discharge." *McDermott v. Recupero (In re Recupero)*, 2014 WL 1884331 at *10, 2014 Bankr. LEXIS 2115 at *28-29 (Bankr. N.D. Ohio May 12, 2014); *Village of San Jose v. McWilliams*, 284 F.3d 785 (7th Cir.2002); *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574 (2d Cir. 1983). A concealment need not be to another individual to be fraudulent, because a debtor's transfer of assets to a wholly owned corporation without adequate consideration may be sufficient to deny discharge. *In re Green*, 202 B.R. 68, 73; *Fru–Con Constr. Corp. v. Araujo*

Beaver Creek was in a receivership, and Frasor, as the state court appointed receiver since July 19th, 2013 [Pl. Ex. 2, p. 2-1, ¶ 5], was in control of Beaver Creek and the Properties. Second, Defendant has been incarcerated since June of 2013, further removing him from any kind of actual control or "secret benefit" from the Properties, or his ownership of Beaver Creek, during the one year period prior to the filing of this Chapter 7 bankruptcy case.

This is a close case, particularly based on Defendant's post-filing conduct. However, given the requirements[12], such as construing the statute in favor of the Debtor, and the burden of proof being on the party seeking denial of discharge, leads the court to find that Defendant's pre-Petition conduct does not rise to the level required to deny discharge under § 727(a)(2)(A).

While Debtor's pre-Petition conduct falls just short of the requirements under § 727(a)(2)(A), Defendant's conduct does warrant denial of discharge under § 727(a)(2)(B) based upon his post-Petition conduct, misstatements and omissions involving concealment of property and information, both from his creditors and the Chapter 7 Trustee.

For denial of discharge under § 727(a)(2)(B), the Plaintiff has to prove: 1) that the debtor transferred, removed, destroyed, mutilated or concealed property of his bankruptcy estate after the petition filing date; and 2) the conduct occurred with actual intent to hinder, delay or defraud a creditor or officer of the estate. *Harker v. West (In re West)*, 328 B.R. 736, 752 (Bankr.S.D.Ohio 2004); *Sowers*, 229 B.R. at 156. In other words, the debtor must fraudulently conceal property of the estate after the date of the filing of the petition. *Montedonico v. Beckham (In re Beckham)*, 421 B.R. 602, 2009 WL 1726526 at *7, 2009 Bankr. LEXIS 1345 at *20 (6th Cir. BAP 2009). "[F]raudulent intent can be found where the defendant demonstrates 'reckless disregard or indifference for the truth.'" *Helbling v. Holmes (In re Holmes)*, 2008 WL 6192253 at *4, 2008 Bankr.LEXIS 4577 at *11 (Bankr. N.D. Ohio Dec. 3, 2008)(citing cases); *see also*, *In re Rahmi*, 535 B.R. 655, 661 (Bankr. N.D.W. Va. 2015). "[C]ourts may deduce fraudulent intent from all the facts

---

*(In re Araujo)*, 2011 WL 4054856 at *4, 2011 Bankr. LEXIS 3478 at *11-13 (Bankr. D. Md. Sept. 9, 2011); *In re Recupero*, 2014 WL 1884331 at * 7, 2014 Bankr. LEXIS 2115 at *21-22 (Bankr. N.D. Ohio May 12, 2014).

[12]/ In an unpublished opinion, the Bankruptcy Appellate Panel for the Sixth Circuit held that failure to disclose assets in connection with the filing of a bankruptcy petition should not be treated as a pre-Petition concealment. *Montedonico v. Beckham (In re Beckham)*, 421 B.R. 602, 2009 WL 1726526 at *7, 2009 Bankr. LEXIS at *19 (6th Cir. BAP 2009); *see also*, *In re Singh*, 568 B.R. 187, 202 (Bankr. E.D.N.Y. 2017). Although this court is not bound by the *Beckham* decision, its holding is a factor in the court's decision that the requirements of § 727(a)(2)(A) have not been met.

17

and circumstances of a case", and there is no requirement that a creditor actually be harmed by the debtor's actions. *Keeney*, 227 F.3d at 685-686.

As with § 727(a)(2)(A), the plaintiff may establish the debtor's intent under § 727(a)(2)(B) through evidence of his conduct. *Hunter v. Sowers*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998).

Based on the bankruptcy filings by Defendant, a trustee reviewing the documents would not know - either from Mr. Kerr's earlier Chapter 7 filing in 2014 (where a different Chapter 7 Trustee had been assigned[13]) or from the information in his "continuation sheets" filed in his two Chapter 7 bankruptcy cases, about the transfers of the Properties to Beaver Creek. The Properties were not listed in the continuation sheet, nor was there disclosure of the fact that there had been a transfer of those Properties from Mr. Kerr to Beaver Creek. But, as noted above, question 10 in the Statement of Financial Affairs does not specifically require disclosure of transfers that occurred more than two years prior to filing.

However, the question of whether property was concealed must also be analyzed in connection with other non-disclosures that clearly were required. Those non-disclosures include the failure to list the names and addresses of creditors that Mr. Kerr had been litigating with prior to the filing of the Chapter 7 cases - creditors who had pre-Petition judgments against him.[14] In addition to his failure to list those creditors in his Schedules, in answering interrogatories from the Trustee, Defendant responded to the question: "Have you looked over your petition to make sure that it accurately reflects everything you own and everyone you owe money to?", with the hand written answer "Yes". [Pl. Ex. 15, p. 15-2]. Even after Lenz and Bishop filed Motions that alleged they had not been properly listed and notified of Defendant's bankruptcy, it was more than a year before an

---

[13]/ The Order of Dismissal in Defendant-Debtor's previous Chapter 7, Case No. 14-34007, was entered on November 26, 2014. [Doc. # 16]. Thus the earlier case was dismissed before the date set for the first meeting of creditors, which as December 18, 2014. [Doc. # 6]. Notably, in responding to the question on the Petition about bankruptcy cases the Debtor had filed in the last eight years, Defendant did not list his 2014 case [Case No. 14-34007] on his 2015 Petition. [Case No. 15-30531, Doc. #1, p. 2; Pl. Ex.#14, p. 14-2].

[14]/ It is difficult to understand the failure to list the names and addresses of pre-Petition judgment creditors. See, *In re Mack*, 2009 WL 2998975 at *4, 2009 Bankr. LEXIS 2937 at * 9-10 (Bankr. M.D.N.C. Sept. 18, 2009) ("The debtor knew that statements he made under oath were false. The Debtor listed only two creditors despite that fact that he had multiple judgments against him and was in the midst of criminal charges relating to defrauding numerous investors. The numerous judgments and the pending federal case are evidence that the Debtor had knowledge of creditors that he did not list on the Petition. The Debtor's claim that he was not aware of certain debts because he was incarcerated is disingenuous. Many of the debts that the Debtor failed to list originate from lawsuits and the ensuing judgments which were entered prior to the Debtor's incarceration.").

Amended Schedule F (and a new matrix) was filed, listing Lenz and Bishop, as well as "Carter Lumber", Larry Eilert and "Julie" Eilert, ABCO Services, Inc., and Frasor.[15] [Case No. 15-30351, Doc. # 86].

The failure to list these creditors must be viewed in the context of a related failure to make another required disclosure. Defendant failed to list the causes of action he believed he had against the very creditors whose names and addresses were left off of his schedules and the mailing matrix. No causes of action were listed on Defendant's Schedule B. [Pl. Ex. 14, pp. 14-9 - 14-11]. Moreover, one of the Trustee's interrogatories, Question 12, asked: "Do you have the right to sue anyone for any reason? If yes, please specify." Defendant's hand written answer in response to that interrogatory was "No". [Pl. Ex. 15, p. 15-3].

Less than a month after stating in his interrogatory response that he did not have right to sue anyone, Defendant wrote the Trustee a letter claiming he had not listed any causes of action because it was not clear where they should have been listed in Schedule B. [Pl. Ex. 16]. This explanation is contradicted by the response to interrogatory Question 12. [Pl. Ex. 15, p. 15-3]. The letter also reflects that Defendant was spurred to take this action because he learned, through electronic legal research, that his undisclosed legal claims would not come back to him as viable causes of action after his bankruptcy.[16] [Pl. Ex. 16].

After the Trustee replied by mail [Pl. Ex. 17], Mr. Kerr provided the Trustee with a list of at least six causes of action, plus a claim that a lien was invalid. [Pl. Ex. 18].

Each of those causes of action, whether meritorious or not, were property of the bankruptcy estate. *See*, 11 U.S.C. § 541(a); *Waldschmidt v. Commerce Union Bank (In re Bauer)*, 859 F.2d 438,

---

[15]/ It is not clear why Steven Zimmerman was not listed in the Amendment filed on December 16, 2016.

[16]/ There are two legal impediments to a debtor protecting causes of action by failing to disclose the existence of the claims. One problem is that only estate assets that have been scheduled and "not otherwise administered" are abandoned to the debtor upon the closing of the bankruptcy case. *See*, 11 U.S.C. § 554©. Unscheduled causes of action are not abandoned and remain in the closed Chapter 7 bankruptcy estate. *See*, § 554(d). The second problem is presented by the legal doctrine of "judicial estoppel". "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in a prior case." *Harrah v. DSW, Inc.*, 852 F.Supp.2d 900, 904 (N.D. Ohio 2012). Unless shown to be due to "mistake or inadvertence", sworn statements in the Schedules that a debtor does not have causes of action, other than those that are listed, is sufficient to make judicial estoppel applicable. *Id.*, at 905. Defendant's letter to the Trustee [Pl. Ex. 16] reflects that he was initially unaware that failing to disclose the causes of action would not allow him to assert the claims as his own after the bankruptcy was closed.

19

440–41 (6th Cir.1988), *cert. denied*, 489 U.S. 1079 (1989); *In re Rankin*, 438 Fed.Appx. 420, 424-425 (6th Cir. Aug. 23, 2011)("all legal or equitable interests of the debtor in property as of the commencement of the case, and ... the 'interests of the debtor in property' include 'causes of action.'")(quoting *Bauer*); *Barefield v. Hanover Ins. Co.*, 521 B.R. 805, 809 (Bankr. E.D. Mich. 2014)("It is well-settled that the right to pursue causes of action formerly belonging to the debtor ... vests in the trustee for the benefit of the estate.")(quoting *Bauer*).

Had the Trustee known of the causes of action, it is possible she could have attempted to litigate, settle or sell them. Conversely, the potential defendants in Mr. Kerr's listed causes of action could have - if they had received notice of the case, and if the causes of action had been listed - sought to limit their potential costs and liabilities by either settling the actions or extinguishing them by purchasing them for, if nothing else, nuisance value. In combination, the failure to list the creditors' names and addresses, and the failure to list the causes of action, concealed the existence of the causes of action, which are property, from both the unlisted creditors and the Trustee.

A party objecting to the debtor's discharge under § 727(a)(2) need not prove that a debtor intended to hinder, delay, *and* defraud his creditors; proof of any one is sufficient. *Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999); *see also*, *In re Wreyford*, 505 B.R. 47, 55 n.6 (Bankr. D.N.M. 2014). Thus, for example, if plaintiffs are able to establish a debtor's intent to delay, it is not necessary to prove an intent to defraud. *Id*.

At a minimum, the failure to disclose both the causes of action, and the names and addresses of known creditors, was intended to hinder and delay creditors and the Chapter 7 Trustee, and facts here support an actual intent to defraud. The negative response to the clearly stated question in interrogatory Question 12 [Pl. Ex. 15, p. 15-3], followed by the statements in Defendant's letter to the Trustee less than a month later [Pl. Ex. 16], negate Debtor's claims of an honest mistake or inadvertence.

For the reasons stated above, the court finds that the Defendant concealed property of the estate from creditors and the Trustee, and that the concealment was intended to hinder, delay or defraud creditors and/or the Trustee. Accordingly, the court will deny Defendant's discharge under Plaintiff's Claim brought pursuant to Section 727(a)(2)(B).

## II. Section 727(a)(4)(A).

To satisfy Section 727(a)(4)(A), the UST must prove that 1) the Debtor made a statement

under oath; (2) the statement was false; (3) the Debtor knew that the statement was false when he made it; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. 11 U.S.C.A. § 727(a)(4)(A); *Keeney*, 227 F.3d at 685.

Statements are material for the purposes of § 727(a)(4) if they "bear[ ] a relationship to the [debtor's] business transactions or estate, or concern[ ] the discovery of assets, business dealings, or the existence and disposition of property." *Keeney*, 227 F.3d at 686 (quoting, *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992)). "[I]ntent to defraud 'involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression.'" *In re Keeney*, 227 F.3d at 685; *see also*, *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984)("Deliberate omissions by the debtor may also result in the denial of a discharge."); *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (9th Cir. BAP 2004)(Section 727(a)(4)(A) includes both affirmative false statements and omissions); *In re Gandy*, 645 Fed.Appx. 348, 352 (6th Cir. April 7, 2016). "A reckless disregard as to whether a representation is true will also satisfy the intent requirement." *Keeney*, 227 F.3d at 686.

It is important in a bankruptcy proceeding that the information a debtor provides in his petition, schedules, and SOFA be "accurate, thorough, and reliable.*" Kaler v. McLaren (In re McLaren)*, 236 B.R. 882, 894 (Bankr.D.N.D.1999). "Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true." *In re Rao*, 526 B.R.623, 628 (Bankr. E.D. La. 2015). Or, as the Sixth Circuit Court of Appeals has succinctly stated: "Complete financial disclosure is a prerequisite to the privilege of a discharge." *Keeney*, 227 F.3d at 685. Thus, the Code contains a separate provision for denial of discharge when a debtor knowingly and fraudulently makes false statements under oath or in connection with his bankruptcy case. *See,* 11 U.S.C. § 727(a)(4)(A). Here, Plaintiff asserts that denial of Defendant's discharge is appropriate because of numerous false statements and omissions made by Defendant in his petition, schedules and SOFA, and in his interrogatory responses. [Doc. # 1].

Statements made in bankruptcy schedules, statement of financial affairs and at 341 meetings

21

are given under oath. *In re Hamo*, 233 B.R. 718, 725 (6th Cir. BAP 1999); *United States Trustee v. Winters (In re Winters)*, 2008 WL 202774 at *4, 2008 Bankr. LEXIS 799 at *10-11 (Bankr. N.D. Ohio Jan.22, 2008); *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr.E.D.Tenn.2006). For purposes of § 727(a)(4)(A), courts have held that "interrogatories also constitute statements made under oath." *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007); *see also*, *Korrub v. Cohn (In re Cohn)*, 561 B.R. 476, 494 (Bankr. N.D. Ill. 2016)("A debtor's petition, schedules, statement of financial affairs, statements made at an 11 U.S.C. § 341 meeting, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4)."); *Taylor v. Crawford (In re Crawford)*, 553 B.R. 43, 49 (Bankr. W.D.N.C. 2016); *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 922 (Bankr. D. Utah 2006).

Statements are material if they concern the "discovery of assets, business dealings or [the] existence or disposition of property." *In re Hamo*, 233 B.R. at 725 (further citations omitted); *see also, Keeney*, 227 F.3d at 686. "Knowledge may be shown by demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information." *Id.*

In this case, the aggregation of evasions as to the existence of Defendant's interests in the Properties, the failure to list the names and addresses of known creditors, the number of instances where Defendant failed to disclose other items in his petition, schedules, SOFA and interrogatories, and his failure to promptly correct omissions that were detrimental to creditors, all demonstrate that the requirements of § 727(a)(4)(A) have been met.

During the proceedings related to Defendant's Chapter 7 case and proceedings related to this adversary proceeding, Defendant has demonstrated legal skills and knowledge far greater than the usual *pro se* litigant. At the trial, there was testimony and evidence regarding Defendant's abilities in his self-representation in state court matters. Further, his own descriptions of his potential causes of action demonstrate a degree of legal sophistication. [Pl. Ex. 18]. While Defendant asserts that he is not well versed in bankruptcy, he had been a debtor in three previous Chapter 7 cases before this one - Case Nos. 99-34558, 00-34616, and 14-34007.

In addition, courts have held that any ambiguities with regard to information, or lack thereof, in a debtor's schedules or statements of affairs are construed against the debtor as both the drafter of the documents and as the party most familiar with the information. *See*, *Williams v. Biesiada*, 498 B.R. 746, 755 (S.D. Tex. 2013)(citing cases); *In re Saleh*, 427 B.R. 415, 424 (Bankr. S.D. Ohio

22

2010). The significant omissions and errors in Defendant's petition and SOFA, and in the interrogatory responses, must be viewed in this light.

In his Schedule B [Case No.15-30531, Doc. # 1], Defendant listed his "[s]tock and interests in incorporated and unincorporated businesses" as "none", and he listed no value for those interests. [*Id.* at p. 10]. He did not list his interests in Kerr Buildings and Beaver Creek, nor did he identify values associated with those interests.[17] [Case No. 15-30531, Doc. # 1, Schedule B]. Schedule B also failed to reflect any of the causes of action that the Defendant later asserted he had, including causes of action against his unlisted judgment creditors. As Novak discussed in her testimony, Defendant wrote "None" for property on Schedule A and had "None" checked for each and every line item[18] in Schedule B.

Pursuant to Federal Rule of Bankruptcy Procedure 1007(a)(1): "In a voluntary case, the debtor is responsible for filing, along with the petition, a list of creditors." 9 Collier on Bankruptcy, ¶ 1007.02[1] at 1007-9 - 1007-10 (16th ed. 2013). The Rule specifically states that what is required is a "list containing the name and address of each entity included or to be included on Schedules D, E, F, G and H as prescribed by the Official Forms." Fed. R. Bankr.P. 1007(a)(1). This requirement is supplemented by Local Bankruptcy Rule 1007-2 which states, in pertinent part: "Unless otherwise ordered by the Court, all petitions must be accompanied by a mailing matrix listing creditors and parties in interest."

In addition, the written instructions at the top of Schedule F specifically state, in the very first sentence: "State the name, mailing address, including zip code, and the last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or property of the debtor, as of the date of filing." [Pl. Ex. 14, p. 14-20]. The obligation to list creditors' names and mailing addresses was not something that needed to be researched, as the requirement was in the printed instructions for the form that Defendant was filing out.

---

[17]/ It was not until December 29, 2015, nearly ten months after his Petition was filed, that Defendant filed an Amended Schedule B which included Defendant's interests in Kerr Buildings, Inc. and Beaver Creek Development, LLC [Case No. 15-30531 Doc. # 75; Pl. Ex. 26].

[18]/ Some courts have specifically held that an omission of information requested in schedules or a SOFA constitutes an affirmatively false statement that the undisclosed information did not exist. *See e.g.*, *In re Gartner*, 326 B.R. 357, 367 (Bankr. S.D. Tex. 2005).

Nevertheless, in completing Schedule F, which was filed and signed under oath[19], Defendant did not include the names and addresses of the Receiver or certain judgment creditors (Carter-Jones Lumber Co., Keith Lenz, Larry Eilert and Juliet Eilert, ABCO Services, Steven Zimmerman, Scott Bishop and Kathy Bishop) and/or their attorneys, nor were they listed on the Creditor Matrix. Rather, Defendant listed case numbers from civil actions brought by certain creditors and used the addresses of the courts in which the lawsuits were brought. [Case No. 15-30531, Doc. # 1].

This was not a case where the list of creditors was extensive. The creditor matrix in this case contained fourteen (14) addresses. The top three listed addresses are the Lucas County Common Pleas Court, the Wood County Common Pleas Court, and the Bowling Green Municipal Court. [Pl. Ex. 14, pp. 14-50 - 14-52]. These address correspond to multiple entries on Schedule F where, under the heading "CREDITOR'S NAME, MAILING ADDRESS, INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above)", court names (and case numbers) were listed instead of the name and address of the individual creditor. [Pl. Ex. 14, pp. 14-17 - 14-21][20].

On August 12, 2015, a Motion was filed on behalf of creditor Keith Lenz that specifically stated that the creditors were "just made aware of this bankruptcy proceeding" and were "never directly noticed of this bankruptcy". [Case No. 15-30531, Doc. #37; Pl. Ex. 23]. On August 14, 2015, a second Motion was filed, this one on behalf of creditor Scott Bishop, stating that he was owed "a debt which Debtor failed to disclose in Schedule F of his Chapter 7 Voluntary Petition" and that "proper notice of this case was never completed upon Creditor." [Case No. 15-30531, Doc. #39; Pl. Ex. 24]. Both these Motions were served on Defendant at the address listed in his Petition, but the second Motion, filed by Scott Bishop, was also served on Defendant at the North Central Correctional Institution. [Case No. 15-30531, Doc. #39, p. 3; Pl. Ex. 24, p. 24-3].

Further, it was not until December 16, 2016, more than twenty-one months after his petition was filed, that Defendant filed an Amended Schedule F.[21] Thus, the proper listing of these creditors

---

[19]/ *See*, 28 U.S.C. Section 1746.

[20]/ Defendant's Schedule F, as docketed, is not in the usual order - with the fourth page of the filed Schedule F being the page with the instructions. [Case No. 15-30531, Doc. # 1, pp. 17-21]. The same pagination is reflected in Plaintiff's Exhibit 14, pages 14-17 to 14-21.

[21]/ A debtor's subsequent amendments to the schedules may rectify an honest mistake, but cannot expunge any fraud in the falsity of an oath on the original schedules. *See*, *In re Spitko*, 357 B.R. 272, 313 (Bankr. E.D. Pa. 2006)(citing cases); *In re Gardner*, 344 B.R. 663, 667 (Bankr. M.D. Fla. 2006). Amendments made before the first

24

was not accomplished until long after Lenz and Bishop had complained in their motions, in August of 2015, about not being provided notice. [Case No. 15-30531, Doc. ## 37, 39]. Defendant filed an Affidavit stating that he had "assumed it was proper protocol to serve the Courts in order to trigger the automatic stay, who will then in turn, serve notice on the creditor." [Doc. #56, p. 5-6].

In the period after Lenz and Bishop had specifically complained about the lack of service, and the filing of the Amended Schedule F, Debtor filed signed Certificates of Service based upon the incomplete matrix on: September 28, 2015 [Doc. # 67, p. 2-3], October 7, 2015 [Doc. # 72, p. 2-3], December 29, 2015 [Doc. # 75, pp. 7-8], and May 12, 2016 [Doc. #84, pp. 8-9]. It was only upon the filing of Amended Schedule F that Carter Lumber, Keith Lenz, ABCO Services, Inc., Scott Bishop, and Frasor were now listed as creditors, and included on the creditor matrix, for the first time. [Pl. Ex. 30]. This Amendment to Schedule F, adding the names and addresses, was not filed until more than 15 months after the UST's Complaint alleged that the names and addresses of these creditors were omitted knowingly and fraudulently. [Doc. #1, p. 3, ¶ 17].

As several courts have observed: ""[I]f this type of conduct were to be condoned and would cure denial of discharge, chaos in the Bankruptcy Courts would result because [debtors] would be encouraged to falsify filings with the concept of a later remedy by disclosure if it subsequently appeared that the false filings would be discovered." *Villas on the Green, Inc. v. Trauger (In re Trauger)*, 101 B.R. 378, 382 (Bankr. S.D. Fla. 1989); *see also*, *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir.1985)("The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive. The omission of assets may be a good reason to deny or revoke a discharge.").

Defendant also repeatedly misstated his address, claiming in his Petition that the "Street Address of Debtor" was 13926 Defiance Pike, Rudolph Ohio when, at the time of filing, Mr. Kerr

---

meeting of creditors are often seen as stronger evidence that the failure to disclose was inadvertent. *See*, *In re Hughes*, 490 B.R. 784, 792 (Bankr. E.D. Tenn. 2013)("Disclosure or correction of an inaccuracy at the first meeting of creditors is evidence that there was no fraudulent intent."); *Buckeye Ret. Co., LLC v. Heil (In re Heil)*, 289 B.R. 897, 908 (Bankr. E.D. Tenn. 2003)("Generally, a debtor's amendment of his schedules and/or reporting of omissions or misstatements prior to or at the meeting of creditors evidences a lack of fraudulent intent."). Amendments that are made later, or after litigation has been commenced, are given far less weight. *See e.g.*, *In re Koch*, 564 B.R. 553, 565-566 (Bankr. E.D. Mich. 2017)("amendments—ten months later —will not excuse the dishonest acts"); *In re Hughes*, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006)(amendment even less effective in negating a knowing false oath when only filed "after the falsity of the original schedules and SOFA was revealed").

was incarcerated at North Central Correctional Institution.[22] [Pl. Ex. 14, p. 1]. In reliance on the listed address, documents like the Trustee's Motion to Extend Time to File Objections [Case No. 15-30531, Doc. # 13, p. 2] and the UST's Motion to Extend Time in which to File a Motion to Dismiss the Case Pursuant to 11 U.S.C. §707(b) or File a Complaint Objecting to Discharge Pursuant to 11 U.S.C. §727 [Case No. 15-30531, Doc. # 21, p. 3; Doc. #24, p. 2] were served on Defendant at 13926 Defiance Pike. Notably, in filing pleadings, Defendant used the Defiance Pike address under his signature. [Doc. #67, p. 1].

In addition, Defendant's Petition failed to disclose that he had filed a bankruptcy case within the previous 8 years. [Case No. 15-30531, Doc. # 1, p. 2]. In fact, Mr. Kerr's previous Chapter 7 case, 14-34007 [Pl. Ex. 12] had been dismissed a few months before the filing of his present Chapter 7 case. The assertion that he had not filed a bankruptcy case in the previous 8 years was repeated in Defendant's application to have the Chapter 7 filing fee waived - in response to the question "Have you filed for bankruptcy within the last 8 years?" Mr. Kerr checked the box for "No." [Case No. 15-30531, Doc. #6, p. 3]. That document, requesting to have the filing fee waived, is signed under penalty of perjury. [*Id*.]. In his undisclosed 2014 Chapter 7 case, the court had, in an Order, discussed the fact that the Defendant was incarcerated - a fact not disclosed to the Trustee or creditors in any of the documents filed in his 2015 Chapter 7 case. [Case No. 14-34007, Doc. #16].

Moreover, the Defendant also answered interrogatories in lieu of attending a Section 341 Meeting. [Pl. Ex. 15]. Interrogatory No. 7 asks: "Have you looked over your petition to make sure that is [sic] accurately reflects everything you own and everyone you owe money to?" Defendant responded with a hand written "yes". [Pl. Ex. 15, p. 15-2]. As previously detailed, creditors that engaged Defendant in litigation (and obtained judgments) prior to the filing of Mr. Kerr's Chapter 7 case were not listed.

In response to Question No. 4, "What is your current address and how long have you resided at this address?", Defendant listed his address as 13926 Defiance Pike, Rudolph, Ohio 43462, not the North Central Correctional Institute address where he was currently residing. [Pl. Ex. 15, p. 15-

---

[22]/ Among the duties of a debtor is the obligation to "file a statement of any change of the debtor's address". Failing to provide and maintain a current mailing address is generally held to make service on the listed address sufficient. *See e.g.*, *In re Barrett*, 569 B.R. 687, 691 n.7 (Bankr. E.D. Mich. 2017); *In Williams*, 2014 WL 1017604 at *3, 2014 Bankr. LEXIS 1026 at *7-8 (Bankr. N.D. Ohio March 17, 2014).

26

2].  More than seven months later, a correction was filed on January 15, 2016, stating that: "At the time of filing, Debtor resided in the custody of the State of Ohio at NCCI in Marion, Ohio."  The correction was filed as part Defendant's Supplementation of Interrogatories, but this was not corrected until January 15, 2016. [Pl. Ex. 27].

Interrogatory No. 5 asked: "Have you ever filed bankruptcy before?  If yes, please specify what year and where the bankruptcy was filed?"  Defendant's response was: "circa 1996 or 1997" and "Toledo".  [Pl. Ex. 15, p. 15-2].  While the court does not base Defendant's denial of discharge on failing to more accurately describe his two prior Chapter 7 cases in 1999 and 2000, the failure to list his late 2014 Chapter 7 bankruptcy is one of Defendant's many false statements that are part of the court's decision.[23]

Finally, as previously discussed, Question 12 asked: "Do you have the right to sue anyone for any reason?  If yes, please specify."  Defendant's hand written answer was "No".  [Pl. Ex. 15, p. 15-3].  Less than a month later, Defendant wrote the Trustee a letter stating that "[u]pon reviewing caselaw on LEXIS" he had stumbled on a case where an individual had lost a cause of action for failing to list it in his bankruptcy schedule.  [Pl. Ex. 16].  Mr. Kerr asserted he had several "causes of action" that will arise in a non-bankruptcy context, but he did not "see where these 'causes of action' should be listed." [*Id.*].  After the Trustee replied by mail [Pl. Ex. 17], Mr. Kerr listed at least six causes of action, plus a claim that a lien was invalid. [Pl. Ex. 18].  The level of detail and thought associated with this recitation is wholly inconsistent with Defendant's response to interrogatory Question 12, denying he had the right to sue "anyone for any reason".  [Pl. Ex. 15, p. 15-3].

While one or two misstatements or errors might have been plausibly explained by Defendant, the multiple and significant false statements and omissions made in this case cannot be excused. While Defendant's testimony was that the errors that were made were due to inadvertence[24] or being unaware of the correct way to include information in his petition and schedules, Defendant proved

---

[23]/  Courts have looked at the sheer number of misstatements as evidence of a debtor's reckless disregard for the truth that may be sufficient to find an intent to deceive.  *See e.g.*, *In re Drumm*, 524 B.R. 329, 395 (Bankr. D. Mass. 2015)(citing cases); *In re Traina*, 501 B.R 379, 386 (Bankr. N.D. Cal. 2013); *In re Sullivan*, 204 B.R. 919, 943 (Bankr. N.D. Tex. 1997)("the series of mistakes and omissions constitutes evidence of a pattern of reckless disregard for the truth sufficient for this Court to derive the necessary intent to deceive.").

[24]/ "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath."  *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987).

27

himself extremely capable in this bankruptcy proceeding when he thought it was in his own interest to make changes to his bankruptcy information. [Pl. Exs. 17, 19]. On the other hand, when changes and corrections were obviously needed, but would only benefit his creditors, the Trustee, or the UST, changes and corrections were not made in anything approaching a timely manner. Defendant had numerous opportunities, and a continuing duty, to correct the litany of false statements that were made under oath, but he did not do so until it was far too late for any inference of honest intent or purpose.

The aforementioned facts and circumstances in this matter give rise to a reasonable and inescapable inference that Defendant knew that many material statements he made in connection with his bankruptcy were false, and that he made those statements with fraudulent intent or, at least, a reckless disregard for the truth. Therefore, the combination of his specific false statements and omissions in the petition, schedules, matrix, application to waive the filing fee, and his interrogatory responses, are sufficient to warrant denial of Defendant's discharge under Section 727(a)(4)(A).

## III. Section 727(a)(5).

Section 727(a)(5) allows a court to deny a discharge where "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

With respect to a claim brought under this section, "[a] plaintiff in a § 727(a)(5) action has the burden to identify assets which the debtor at one time owned and claims, in his schedules, to no longer possess. Once having met that burden, the burden shifts to the debtor to offer a satisfactory explanation of the loss of assets." *Crocker v. Stiff (In re Stiff),* 512 B.R. 893, 900 (Bankr. E.D. Ky. 2014) (*citing, PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 116 (Bankr.W.D.Pa.2000)). Unlike the other § 727 claims brought by Plaintiff, "noticeably lacking from § 727(a)(5) is any element of wrongful intent or, for that matter, any affirmative defenses—§ 727(a)(5) simply imposes strict liability." *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr.N.D.Ohio 2004).

In other words:

[t]he initial burden is on the Plaintiff to establish the loss or deficiency of assets by demonstrating that (1) at a time not too remote from the bankruptcy, the Defendant owned identifiable assets; (2) on the day that he commenced his bankruptcy case, the Defendant no longer owned the particular assets in question; and (3) his schedules and/or the pleadings in the bankruptcy case do not offer an adequate explanation for

28

the disposition of the assets in question. The Plaintiff is not required to prove that the Defendant acted knowingly or fraudulently, as "noticeably lacking from § 727(a)(5) is any element of wrongful intent or, for that matter, any affirmative defenses— § 727(a)(5) simply imposes strict liability."

*Roberts v. Debusk (In re Debusk)*, 2008 WL 3904448 at *8, 2008 Bankr. LEXIS 4662 at *23 (Bankr. E.D. Tenn. Aug. 19, 2008) (*citing, Schilling v. O'Bryan (In re O'Bryan)*, 246 B.R. 271, 279 (Bankr. W.D. Ky.1999) *and quoting, Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004)).

As noted *supra* with respect to Plaintiff's claims pursuant to Sections 727(a)(2) and (a)(4), the court has found that Defendant transferred the Properties to an entity wholly-owned by himself, and therefore, Defendant still has an interest in any assets held by Beaver Creek.

Plaintiff did not establish at trial that Defendant had not explained any loss of assets. Defendant no longer owned the Properties on the day that he commenced his bankruptcy case, but it was not clear, from the evidence presented, what needed additional explanation. The transfer of the Properties, for no consideration, appears to have been a fraudulent conveyance under Ohio law, but the facts associated with that transaction are known. While there were some issues about the books and records of Beaver Creek, the UST did not present sufficient evidence for the court to deny discharge on that basis.

Because Plaintiff has not met his burden under Section 727(a)(5), the court will not order denial of Defendant's discharge on that basis.

<u>CONCLUSION</u>

For the foregoing reasons, the court finds that Plaintiff is entitled to judgment in his favor on claims brought pursuant to 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A). A separate judgment in accordance with this Memorandum of Decision will be entered.

####

29